W. A. BOND *et al.* Appellants, *vs.* SALLY PALMER CURTIS
MOORE *et al.* Appellees.—LESTER CURTIS, Appellant, *vs.*
SALLY PALMER CURTIS MOORE *et al.* Appellees.

*Opinion filed October 26, 1908—Rehearing denied Dec. 8, 1908.*

1. WILLS—*intention to be sought is that expressed in the will.*
The intention to be sought in construing a will is not that which
by inference may be presumed to have existed in the mind of the
testator, but that which he has expressed in the will.

2. SAME—*devise by implication can be given effect only in case
of clear necessity.* A devise by implication can only be given ef-
fect in a case of such clear necessity that from the will itself no
reasonable doubt of the intention can exist; and the implication
must be so strong that an intention contrary thereto cannot be
supposed to have existed in the mind of the testator, nor can it be
inferred from silence on the subject.

3. SAME—*presumption against an intention to die intestate does
not justify inserting words in will.* While it is presumed that the
testator intended to dispose of all his property by the will, and it
is the rule that any reasonable construction consistent with the
will will be adopted which will dispose of the entire estate, yet this
presumption and rule do not authorize the insertion of words in
the will to accomplish such result.

4. SAME—*when devise by implication does not exist.* A provi-
sion of a will giving a life estate to the son of the testatrix, but
should he die without children the estate to go to the nearest rela-
tives of the testatrix, does not raise a devise by implication to the
children of the life tenant in case they survive him. (*Orr* v. *Yates,*
209 Ill. 222, and *Stisser* v. *Stisser,* 235 id. 207, explained.)

5. SAME—*effect where the life tenant is the nearest relative.*
Where there is a gift to the son of the testatrix for life with re-
mainder to the next of kin of the testatrix in case the son dies
without children, if the son is the sole next of kin of the testatrix
at her death the remainder will be considered as given to the per-
sons answering the description "next of kin" at the termination of
the life estate.

6. SAME—*when remainder is contingent.* Where there is a de-
vise to the only child of the testatrix for life, with remainder to
the nearest relatives of the testatrix if the life tenant died without
children, the remainder is contingent, and the reversion in the fee
descends to the life tenant, as sole heir of the testatrix, pending
the happening of the event upon which the contingent remainder
is to take effect.

7. SAME—*when contingent remainder is defeated by merger of life estate and reversion.* Where the only child of the testatrix has a life estate under the will and holds the reversion in fee, subject to the happening of the event upon which the contingent remainder to the nearest relatives of the testatrix is to take effect, if such child conveys the life estate and the reversion to a third person the life estate merges in the reversion and the contingent remainder is destroyed, leaving the fee simple title in the grantee. (*Frazer* v. *Supervisors,* 74 Ill. 282, explained.)

8. SAME—*contingent remainder is defeated if particular estate ends before contingency occurs.* Where the particular estate supporting a contingent remainder comes to an end before the happening of the event upon which such remainder is to take effect the remainder is defeated, whether the particular estate reaches its natural termination or is otherwise brought to a premature end.

CARTER, HAND and FARMER, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. G. A. CARPENTER, Judge, presiding.

HORACE K. TENNEY, and ALBERT M. KALES, for appellants.

JOHN S. HUEY, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Sarah Walker died testate in 1883, seized of the west quarter of lot 2, in block 32, known as No. 205 Lake street, and of the west quarter of lot 3, in block 16, known as No. 103 South Water street, both in the original town of Chicago. The second clause of her will, which was executed September 25, 1876, was as follows: "I give, bequeath and devise all of my estate, real and personal, unto my son, Lester Curtis, during his lifetime, and authorize him to sell or exchange any or all of my real estate, and to invest the proceeds thereof as in his judgment he may think best; but should he die without children, then the estate, or so much of it as may remain after his reasonable expenses for living, etc., shall go to my nearest relatives, in such proportions as the law in such cases does provide."

Lester Curtis was the only heir of the testatrix. He was unmarried at the date of the will, but at the time of the death of the testatrix he was married and had two children. Immediately after his mother's death he entered into possession of the premises and has ever since continued in possession of them. In February, 1908, he conveyed them to William A. Bond by deeds reciting the second clause of the will of Sarah Walker, that under it Lester Curtis took a life estate, and that he was also entitled, by descent, to a legal reversion of the fee pending the event of his dying without children, and the taking effect in possession, in that event, of the gift to the testatrix's nearest relatives, and that it was the intention of the grantor to convey the life estate and the reversion in fee, so that the life estate should merge in the fee and be extinguished and prematurely destroyed and the grantee be vested at once with a legal estate in fee in possession, and that any contingent future interest in the nearest relatives should be destroyed. On February 13, 1908, William A. Bond executed a declaration of trust in favor of Lester Curtis for the premises at No. 103 South Water street in fee, and on February 24, 1908, together with his wife, by special warranty deed conveyed the premises at No. 205 Lake street to Lester Curtis. On February 26, 1908, Bond, claiming the fee as trustee, filed his application to have the title to the premises at No. 103 South Water street registered under the Torrens act, and Curtis filed a separate application for the registration of the title to the premises at No. 205 Lake street. The two daughters of Curtis were made parties defendant, as were also various nieces and nephews of Sarah Walker, her next of kin. Mary Isabel Curtis, one of the daughters, assented to the petition, but the appellee Sally Palmer Curtis Moore, the other daughter, filed an answer, denying that Lester Curtis and Bond were the owners of the fee and alleging that she and her sister were the owners of the fee in remainder, subject to the life estate. The answers of the

nieces and nephews alleged that next to the daughters they were the nearest relatives of Sarah Walker, and in case of the death of the two daughters without issue before the death of their father, such of the nieces and nephews as should survive Lester Curtis would be entitled to the fee. The causes were referred to an examiner, who found that the petitioners were the owners of the fee and entitled to have their titles registered, but upon objection the reports were disapproved and decrees were entered dismissing the applications, but without prejudice to the rights of the petitioners in an estate less than the fee. The appeals prosecuted separately to this court have been consolidated.

The principal question arising upon the construction of the second clause of Sarah Walker's will is whether or not there was a devise, by implication, of the remainder in fee to the children of Lester Curtis by reason of the gift over to the nearest relatives of Sarah Walker should he die without children. The appellees contend that under this clause the daughters of Lester Curtis took a vested remainder in fee, subject to his life estate, while the appellants contend that no remainder was given, by implication, to the children of Lester Curtis, but that the reversion in fee descended to Lester Curtis, as sole heir-at-law of his mother, pending the happening of the events upon which the estate given over to the nearest relatives depended, and that upon the conveyance of the life estate and the reversion to Bond the life estate merged in the reversion, and the contingent remainder to the nearest relatives was destroyed because of this termination of the particular estate before the happening of the event upon which the contingent remainder depended.

The object of the construction of wills is to ascertain the intention expressed by the testator. The intention sought is not that which by inference may be presumed to have existed in the mind of the testator, but that which by the words used in the will he has expressed. (*Engel-*

*thaler* v. *Engelthaler,* 196 Ill. 230; *Williams* v. *Williams,* 189 id. 500; *Bingel* v. *Volz,* 142 id. 214.) It will be presumed that it was the intention of the testator to dispose of his entire estate and not to die intestate as to any portion thereof. Any reasonable construction will be adopted, consistent with the terms of the will, so as to dispose of the entire estate, but where no intention is shown by the will as to the disposition of a part of the testator's property it must be regarded as intestate. (*Minkler* v. *Simons,* 172 Ill. 323; *Craw* v. *Craw,* 210 id. 246.) Devises by implication have been recognized, but they can only be given effect in cases of such clear necessity that from the will itself no reasonable doubt of the intention can exist. Probabilities as to the testator's intentions cannot be weighed, but the implication must be so strong that an intention contrary to that imputed to the testator cannot be supposed to have existed in his mind. (*Barlow* v. *Barnard,* 51 N. J. Eq. 620; *Brown* v. *Quintard,* 177 N. Y. 75.) It must be such as to leave no hesitation in the mind of the court and permit no other reasonable inference. (*Connor* v. *Gardner,* 230 Ill. 258.) Moreover, a gift by implication must be founded upon some expression in the will. It cannot be inferred from an absolute silence on the subject. *In re Reinhardt,* 74 Cal. 365; *Nickerson* v. *Bowly,* 8 Metc. 424; *O'Hearn* v. *O'Hearn,* 114 Wis. 428.

The estate given to Lester Curtis by the will is expressly limited to his life. Should he die without children the remainder is disposed of. The will says nothing as to the disposition of the remainder should Lester Curtis have children. Appellees contend that the gift over in default of children implies a gift to the children should any be born. This question has arisen in the English courts, and a series of decisions has established the rule there that a devise to one for life with a remainder over if he dies without issue, does not, of itself, give an estate, by implication, to his issue. (*Greene* v. *Ward,* 1 Russ. 262; *Sparks* v. *Restal,*

24 Beav. 218; *Ranelagh* v. *Ranelagh*, 12 id. 200; *Neighbour* v. *Thurlow*, 28 id. 33; *In re Hayton's Trusts*, 4 N. R. 55; *Seymour* v. *Kilbee*, 3 L. R. Ir. 33; *In re Rawlins' Trusts*, 45 Ch. Div. 299; *Scale* v. *Rawlins*, L. R. (1892,) A. C. 342.) Such is stated to be the rule of law in Page on Wills, 554, and 2 Redfield on Wills, (3d ed.) 204. In the case of *Neighbour* v. *Thurlow, supra,* it was said: "The court will give the most liberal construction to the words of a testator in order to carry out his intention, but it is contrary to every principle to introduce words into a distinct bequest in order to make the will more reasonable or to supply a gift which is not to be found in the will. It is settled that where there is a gift to A for life and if he die without leaving issue, to B, it does not create an implied gift to the children of A. Though it is natural enough to suppose that some words may have been omitted, still the answer is that the testator has not inserted them and the court cannot do so for them." In *Seymour* v. *Kilbee, supra,* it was said that "no such gift [to children] can be implied from the gift over only, and it could only be supported by some other matters existing in the will raising an inference in favor of the issue. I can find nothing of the kind in this will. It does not contain a single word favoring the implication of an interest in the issue beyond the mere gifts over." Where, in a will, there is a gift to A for life with a gift over "on the death of A without leaving children," those words are not, by themselves, without assistance from other parts of the will, sufficient to create a gift, by implication, to the children. (*In re Rawlins' Trusts, supra.*) The same principle was followed in the cases of *Brown* v. *Quintard, supra,* and *Barlow* v. *Barnard, supra.* In the former case the testator directed the division of his residuary estate into four parts, one of which was to be given to one of his children, with certain deductions on account of advancements. The testator had four children but no disposition was made of the other three parts of the resid-

uary estate.. The court held that there was not a devise by implication, citing a number of cases illustrating the inflexibility of the rule that to uphold a devise by implication there must be so strong a probability of the testator's intention that the contrary cannot be supposed.

Opposed to the English decisions above cited is the case of *Ex parte Rogers*, 2 Madd. 49, in deciding which the vice-chancellor refers to *Crowder* v. *Cowles*, 2 Ves. Jr. 449, *Wainwright* v. *Wainwright*, 3 id. 558, and *Harman* v. *Dickenson*, 1 Bro. C. C. 91. The decision in *Ex parte Rogers* was, however, overruled by the court of appeals, and its authority is denied in *Dowling* v. *Dowling*, L. R. 1 Ch. App. 612, reversing the order of the vice-chancellor in L. R. 1 Eq. 441. It was disregarded in the cases heretofore cited, all of which were decided subsequent to it.

We are referred to a number of cases as supporting the claim of appellees that a remainder is devised to the children of Lester Curtis by implication, and it is contended that the decisions of all the American courts of last resort in which a like question was involved sustain appellees' position. The cases specially pressed upon our attention are *Anderson* v. *Messinger*, 77 C. C. A. 179, *Wetter* v. *Hydraulic Cotton Press Co.* 75 Ga. 540, *Shaw* v. *Hoard*, 18 Ohio St. 227, *Holton* v. *White*, 23 N. J. L. (3 Zabr.) 330, and *Carr* v. *Green*, 2 McCord's L. (S. C.) 75. In each one of the first three of the cases above cited the language of the will which devises the property to the first taker imports a devise in fee simple and not a life estate. It is expressly so stated in the opinion in *Anderson* v. *Messinger*. In that case, after the devise of the fee to the testator's two sons, the qualifying clause provides: "If either of my sons die without lineal descendants, the one surviving shall take his estate above bequeathed, and if the survivor die without lineal descendants" then the devise over follows. This devise of a fee, with the provision that upon the death of the devisee without lineal descendants or without issue the

property shall go to another, created a fee, variously called a qualified, conditional, base or determinable fee, in the first devisee, with an executory devise in favor of those who are to take upon the determination of such base fee by the happening of the condition by which it is limited. (*Friedman* v. *Steiner*, 107 Ill. 125; *Smith* v. *Kimball*, 153 id. 368; *Fifer* v. *Allen*, 228 id. 507.) If the event marked out as a boundary to the time of the continuance of the estate becomes impossible, the estate then ceases to be determinable and changes into a single and absolute fee, but until that time the estate is in the grantee. The case of *Anderson* v. *Messinger* arose in the State of Ohio, where the effect of such a devise has been held by the Supreme Court to be the same as in this State. (*Piatt* v. *Sinton*, 37 Ohio St. 353; *Niles* v. *Gray*, 12 id. 320; *Collins* v. *Collins*, 40 id. 353.) In this case there was an express devise of the fee determinable upon the happening of the death of both of the sons without issue. There was therefore no room for implication.

The court to a large extent founded its decision upon another of the cases cited by appellees,—*Shaw* v. *Hoard, supra*. In that case the language of the will was as follows: "I give and bequeath unto my said wife and daughter all the real estate of which I may be seized at the time of my death, to each one-half. On the death of either my wife or daughter, then the survivor shall have the property left them by me; and if both die without leaving any heirs of their body, then and in that case said property shall be given to my wife's brother, David Campbell." The first sentence would give a fee to the wife and daughter, to each one-half, if it were not controlled by the first clause of the second sentence, which reduces the estate devised by the first to a life estate in the one dying first; but there is no limitation on the estate given to the survivor, and she therefore took a fee determinable upon the death of both the wife and daughter without issue. The wife died leaving a

daughter by a subsequent marriage. Thereupon the daughter, the other devisee, became the owner in fee of all the property, and upon her death the daughter of the second marriage, her half-sister and only heir, inherited the estate. The Supreme Court of Ohio arrived at the same result, but it was done by disregarding the express devise of the fee and implying a gift to the issue as a purchaser, thus reducing the fee to a life estate and giving a remainder to the daughter of the wife by implication. This case is inconsistent with the earlier case of *Niles* v. *Gray*, 12 Ohio St. 320, and is, in effect, overruled by the later cases of *Carter* v. *Reddish*, 32 Ohio St. 1, *Piatt* v. *Sinton*, 37 id. 353, and *Collins* v. *Collins*, 40 id. 353.

In *Piatt* v. *Sinton*, just cited, the devise was to Lucinda Frances Piatt of all of the testator's property of every description, and it was further provided that in case she should die without leaving any legitimate heir of her body the property should go to certain nephews and nieces of the testator. It was held that Lucinda Frances Piatt took all the estate of the testator, subject to be defeated upon the happening of the contingency named in the will, and that until such contingency happened the fee was vested in her and her grantees.

In the case of *Wetter* v. *Hydraulic Cotton Press Co. supra*, the devise was to the testatrix's daughter, "to have and to hold the same and her heirs forever." A subsequent clause provided that if the daughter should depart this life leaving no issue or lineal heirs, the estate should go over. This, at common law, was a devise to the daughter in fee simple, and the subsequent clause merely added a condition upon which the estate should be terminated and the property pass to the subsequent takers. The court, however, disregarding the express devise of the fee, held that there was a gift, by implication, to the issue as purchasers, and that the daughter took only a life estate, with the remainder to her children in fee.

We cannot follow these cases or regard them as authority. In each there is an express devise of the fee. In each a subsequent clause imposes a condition, upon the happening of which the estate in fee is to terminate and another is to take its place. This we have always held to constitute a determinable fee, subject to an executory devise to the subsequent takers. It leaves no room for implication. The fact that the event upon which the estate is to terminate is the death, without issue, of the first taker cannot affect the estate granted or give the issue any interest in the devise.

The case of *Holton* v. *White, supra,* appears to support the appellees' contention, though the construction there was not based entirely on the gift over, but to some extent on the other provisions of the will. This case does not go into the authorities, and the court contents itself with a very brief statement of its conclusions.

In *Beilstein* v. *Beilstein,* 194 Pa. 152, it is held that in a devise over in case of the death of a devisee for life "without leaving a family," there is a necessary implication, in the contingency of her leaving a family, that the estate is to go to them. It is said that "this is practically assumed, without question, in the long line of cases on the subject which are carefully reviewed in *Seybert* v. *Hibbert,* 5 Pa. Superior Ct. 537." This is true. At a very early period this principle was assumed in Pennsylvania without discussion, and the courts have followed it down to the latest decisions, merely referring to their prior adjudications.

In *Lytle* v. *Beveridge,* 58 N. Y. 592, the court, after distinguishing the words used there, "legitimate heirs," as not being the equivalent of "issue" or "issue of the body," as imputing an indefinite limitation, held that their use did not enlarge the life estate given to the first taker into a fee, but that such estate was limited to a life estate, and that upon the happening of the contingency the estate did not

descend as an inheritance, but the remainder over took effect. It is true that in argument the court said that the law would imply a devise to the children of the first taker if any had survived him; but no such decision was made or was involved in the case, and the implication seems less necessary there than in the later case of *Brown* v. *Quintard, supra,* where the court held there was no devise by implication.

The case of *Carr* v. *Green, supra,* sustains appellees' contention, but that case is not, and never was, the acknowledged law in South Carolina. It was decided by the court of appeals in equity in May, 1822. In May, 1821, the court of appeals at law, having this same will before it for consideration, had arrived at a precisely opposite result. (*Carr* v. *Jeannerett,* 2 McCord's L. 66.) Thus the rights of the parties depended upon the court in which the proceedings for their determination were brought. In 1824 these two courts were abolished and a court of appeals was established having final appellate jurisdiction in all cases. In 1825 a case involving the same will as the two former cases was brought to the court of appeals. The reasoning of the former cases, and the decisions upon which they were based, were carefully reviewed, and the court of appeals, after an elaborate examination of the authorities and consideration of the principles involved, held that under the devise to the testator's grand-sons with a devise over in default of issue, there was no devise to the issue by implication, and that an estate is never implied to issue as purchasers. (*Carr* v. *Porter,* 1 McCord's Ch. 60.) This principle has since been recognized as the law by the courts of South Carolina. In *Manigault* v. *Deas,* Bailey's Eq. 298, it is held that issue cannot take as purchasers, by implication, from a valid limitation over in the event of death without leaving issue, where there is no direct gift to the issue. So, also, it is held in *McLure* v. *Young,* 3 Rich. Eq. 559, and *Addison* v. *Addison,* 9 id. 58.

In this State the cases of *King* v. *King*, 168 Ill. 273, and *Orr* v. *Yates*, 209 id. 222, are relied upon by appellees. In the former case the testator's scheme of distribution involved the division of his estate into five equal parts and the giving of one portion to each living child and one portion to the representatives of each deceased child. A trust was created as to one share to be held for a grand-son of the testator and his family, with a gift over in case of the death of the grand-son's wife and of his leaving no children surviving him. It was the clear intention of the testator, in setting apart the grand-son's portion to him and his family, to provide for the children also, and that if any part of the property held by the trustees remained after the death of the grand-son and his wife it should go to the children. It was held that such was the plain intention of the testator on the face of the will, and the court refers to the case of *Kinsella* v. *Caffrey*, 11 Irish Ch. 154, in which case, also, the remainder was sustained, and in which the rule of law was stated to be, that "if there is a bequest to a parent for life, and if he die without having or leaving children, to B, if the parent dies leaving children they are not entitled by implication." What was said in the case of *Orr* v. *Yates* as to the succession of the issue of Mary Maria Yates was beyond the question under consideration, and the question where the fee would go in case of her death leaving issue was expressly left undetermined.

In the case of *Stisser* v. *Stisser*, 235 Ill. 207, the testator, after devising a life estate in separate tracts of land to each of three children, directed that in case of the death of either without issue the land should revert equally to the legal heirs of the other children. He then added the statement, "it being the will of the testator that the title to the properties under sections 4, 5 and 6 herein shall rest and abide in the hands of the legal heirs of the lawful heirs of the testator hereto." The context thus clearly indicated the intention of the testator that the title should pass to the

issue of the children. A devise for life with a gift over on the death of the life tenant without issue is not, of itself, sufficient to create a gift, by implication, to the children of the life tenant. Such implication can only arise when supported by some other matter appearing in the will raising an inference in favor of the children.

When we undertake by construction to arrive at Mrs. Walker's intention in regard to the disposition of her property at her son's death in case he should happen to leave children, we are left entirely without aid from the will itself. It is a case for which she has not provided,—whether unintentionally or purposely we have no means of determining. We may speculate or conjecture as to what may have been in her mind, but we can find no indication in the will itself to enable us to say that she intended her son's children to take the remainder. It is clear that the testatrix intended her son to have the use and benefit of the property during his lifetime, with a certain power of disposition. It is clear that she intended, if he died without children, that her nearest relatives at the time of his death should have what was left of the property. It is equally clear that it is impossible to determine her intention as to the disposition of the property if he had children. She had confidence in him, and did not refuse to give him the fee and limit his interest to a life estate because she feared he would squander the property, for she made him executor of her will without bond, and authorized him alone, and not in conjunction with his co-executor, to sell the real estate. She is presumed to have known that her son was her only heir, and that, as such, the property would all descend to him after the termination of the life estate unless she disposed of it by her will. She may have believed that he would use the property for the benefit of his children, should he have any. She knew the property would naturally descend to them as his heirs. The children yet to be born might be deserving or not deserving. Circumstances as developed by

the future might make an unequal division of the property among the children just and proper or a diversion of a part of it in another direction desirable. It may be that upon a consideration of all the circumstances of the situation the testatrix wished to leave to the discretion of her son the disposition of her property, except in the one event of his dying without children. The will shows that in such contingency she wished to control the disposition of such part of the property as might remain after his reasonable expenses for living were satisfied, and she did so by directing it to go to her nearest relatives. There is no word in the will indicating a desire to interfere with the statutory disposition of the property in the alternative of her son's death having children. She may have desired him to have the use of the property during his life and in case of his having children the power to dispose of it as he might in his own discretion think best for the interest of his family, but have also wished the property, in case he had no children, to go to her relatives. It is possible that the testatrix, in case of her son's death having children, desired them to take the property directly from her, but the will expresses no such wish. It is equally consistent with the will that she desired her son to inherit the fee in such event. Being content with the statutory rule of descent, she made no provision to the contrary.

It may be said that it will be presumed that the testatrix intended to dispose of her entire estate, and that the will should be so construed unless this presumption is rebutted by its provisions. It is true that any reasonable construction of a will consistent with its terms will be adopted so as to give it effect to dispose of all the testator's property and not to leave a part intestate, but this rule cannot be carried to the extent of inserting provisions in the will which the testator failed to insert. Clear words are necessary to disinherit an heir, and even where the intention is clearly manifested the heir will take unless the testator de-

vises the property to someone else. (*Parsons* v. *Millar,*
189 Ill. 107; *Lawrence* v. *Smith,* 163 id. 149.) The court
cannot presume a will for a testatrix on mere speculation
as to what might have been her intention. It is the inten-
tion of the testatrix only so far as she has communicated
that intention by her will which is to govern the descent
of her estate. The omission to make any gift in the one
case may have been the intention of the testator as fully as
the gift over in the alternative.

The limitation of the estate to the nearest relatives of
the testatrix should Lester Curtis die without children is a
contingent remainder. Since Lester Curtis was himself the
nearest relative of the testatrix at the time of her death,
the devise comes within the rule that where there is a gift
to one for life with remainder to the testator's next of kin,
and the life tenant is the sole next of kin at the death of
the testator, the remainder will be considered as given to
the persons answering the description at the termination
of the estate for life. (*Johnson* v. *Askey,* 190 Ill. 58.)
Both the event upon which the estate in remainder is to
come into possession, the death without children of Lester
Curtis, and the persons who may at that time be entitled,
as the nearest relatives of Sarah Walker, to take the estate,
are uncertain and the remainder is therefore contingent.
Until its vesting, or the determination of the impossibility
of its vesting, the reversion in fee descended to Lester Cur-
tis as the heir. *Peterson* v. *Jackson,* 196 Ill. 40; *Harri-
son* v. *Weatherby,* 180 id. 418; *Pinkney* v. *Weaver,* 216
id. 185.

It is contended by appellants that by the conveyance to
William A. Bond of the life estate devised to Lester Curtis
and of the remainder in fee inherited by him, the life estate
became merged in the fee and the contingent remainder to
the nearest relatives was destroyed. The effect of a con-
veyance of his estate by a life tenant to the remainder-man
is to cause the destruction of the particular estate, which

becomes merged in the fee. (*Field* v. *Peeples*, 180 Ill. 376; 2 Blackstone's Com. 177; 4 Kent's Com. 100.) Every remainder requires a particular estate to support it, and a contingent remainder must vest during the continuance of the particular estate or *eo instanti* that it determines. (2 Blackstone's Com. 168.) If the particular estate comes to an end before the event upon the happening of which the contingent remainder is to take effect occurs, the remainder is defeated; and this is so whether the preceding estate reaches its natural termination or is brought to a premature end by merger, forfeiture or otherwise. "Unless a contingent remainder becomes vested on or before the determination of the preceding vested estate it can never come into possession,—it has perished. It makes no difference whether the preceding estates have ended by reaching the limit originally imposed upon them, or whether they have been cut short by merger, forfeiture or otherwise.—Gray on Perpetuities, sec. 10." (*Madison* v. *Larmon*, 170 Ill. 65.) "Contingent remainders may be defeated by destroying or determining the particular estate upon which they depend, before the contingency happens whereby they become vested. Therefore, where there is tenant for life with divers remainders in contingency, he may, not only by his death, but by alienation, surrender or other methods, destroy and determine his own life estate before any of those remainders vest, the consequence of which is that he utterly defeats them all." (2 Blackstone's Com. 171.) So a tenant for life, with subsequent contingent remainders, might make a tortious conveyance by deed of feoffment with livery of seizin, and thus forfeit his life estate for the express purpose of destroying the contingent remainders, and upon re-conveyance of the tortious title would hold it free from the contingent remainders. It was to prevent contingent remainders from being defeated by such premature determination or destruction of the preceding estate that the device was invented of interposing trustees to preserve con-

tingent remainders having a legal estate to support the remainders until the happening of the contingency. When the estate for life and the next vested estate in remainder or reversion meet in the same person, notwithstanding intervening contingent remainders, the particular estate will merge in the reversion or remainder and the contingent remainders will be destroyed. A qualification of this rule exists where the creation of the particular estate and the remainder or reversion occur at the same time and by the same instrument. Fearne on Contingent Remainders, secs. 316-324; 3 Preston on Conveyancing, (3d ed.) 399; 2 Washburn on Real Property, (6th ed.) 553, pars. 1597, 1598; Williams on Real Property, 233.

In *Egerton* v. *Messey,* 3 C. B. (N. S.) 338, the devise was to Eunice Highfield for life, remainder, in default of issue of Eunice, to Peter Highfield in fee, residuary devise to Eunice in fee. After the death of the testatrix, Eunice, by lease and release, conveyed to Peter Jackson in fee, and after her death without issue the question of title arose between those claiming under Peter Jackson and those claiming under Peter Highfield. It was held that under the residuary devise the reversion in fee went to Eunice Highfield; that the life estate did not merge in it so long as both remained in the devisee, but that upon her conveyance of both estates to Peter Jackson the life estate merged in the fee and that the contingent remainder of Peter Highfield was destroyed. The same question arose in *Bennett* v. *Morris,* 5 Rawle, 8, and a similar question in *Craig* v. *Warner,* 5 Mackey, 460, and were similarly decided. In *Faber* v. *Police,* 10 Rich. 376, and *McElwee* v. *Wheeler,* id. 392, the devise was for life with contingent remainders over, the life tenant being the sole heir of the testator. The devisees made deeds of feoffment with livery of seizin, and their grantees re-conveyed to the grantors. It was held that the common law not having been modified in South Carolina at the time, the effect of the deeds was to destroy

the life estates and perfect the absolute title in the life tenants. *Redfern* v. *Middleton*, 1 Rice's L. 459.

The case of *Frazer* v. *Supervisors of Peoria County*, 74 Ill. 282, is cited as sustaining the proposition that the court will not permit a contingent remainder to be destroyed contrary to the will of a testator or grantor. A deed was made to an unmarried woman and the heirs of her body. She re-conveyed before having issue, and it was held that the contingent remainder to her children was not thereby destroyed. The question there discussed was the effect of section 6 of the Statute of Conveyances, which modifies estates tail so as to give the first taker a life estate with the remainder in fee simple absolute to the next. The doctrine of merger, which has just been considered, did not apply to estates tail under the statute *de donis,* which were an exception to the rule. Such estates were protected and preserved from merger by the operation and construction given to the statute *de donis* for the express purpose of preventing the particular tenant from thus barring and destroying the estate tail. (2 Blackstone's Com. 177, 178.) It was held in *Frazer* v. *Supervisors of Peoria County* that the General Assembly did not intend to restore the common law as it stood before the adoption of the statute *de donis* and leave the donee with power to alien the estate and re-purchase, and thus cut off both the remainder and reversion, but did intend that the person who should first take from the tenant in tail should take a fee simple absolute, without any power in the donee to dock the remainder or any reversion in the donor except on failure of issue. The case deals with an estate tail only under our statute and is a case of statutory construction only, having nothing to do with the general question of the destruction of contingent remainders.

Our conclusion is that the language of the will does not warrant the implication of a devise of the remainder to the children of Lester Curtis; that the reversion descended to

Lester Curtis, as heir-at-law; that by his deed to William A. Bond the life estate merged in the reversion and the contingent remainder to the nearest relatives of the testatrix was destroyed, and that the appellants hold the title to the premises involved in the respective causes in fee simple.

The decrees are reversed and the causes remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting:

I do not concur in the foregoing opinion. The conclusion reached is manifestly contrary to the plain intent of the testatrix as expressed in the will. The paramount rule in construing wills is to ascertain the intention of the testator and to give to such intent effect, if consistent with the rules of law. (*Bradsby* v. *Wallace,* 202 Ill. 239.) This is the first and great rule in the interpretation of wills and to it all other rules must bend. (*Smith* v. *Bell,* 6 Pet. 68; *Wardner* v. *Baptist Memorial Board,* 232 Ill. 606.) This will provides that the son shall have a life estate, with the right to control, manage, sell or exchange the property and to re-invest the proceeds as he may think best, but he can only use of the proceeds that which is required for his reasonable expenses for living. It is further provided that if the son should die "without children" the remainder shall go to testatrix's nearest relatives. When she was disposing of her property she had these grandchildren in mind and must have intended them to take something or nothing. Clearly she intended them to take something. And what could this be but the intermediate estate? (*Dowling* v. *Dowling,* L. R. 1 Eq. Cas. 441.) If reasonably possible a will will be so construed as to dispose of the entire estate of the testator. (*Scofield* v. *Olcott,* 120 Ill. 362; *Craw* v. *Craw,* 210 id. 246.) By this will the testatrix intended to dispose of all her property, the son taking a life interest in the entire estate. She did not mean to give the remainder

to the residuary legatees unless her son died without children. The phrases, "die without children," and "die without issue," have been construed by this court to mean without having had children or issue. (*Field* v. *Peeples,* 180 Ill. 376.) If the son had children, to whom did the testatrix mean that the remainder should go? Why did she mention these grandchildren if she did not mean them to take this remainder? (*Ex parte Rogers,* 2 Madd. 576.) By necessary implication the children of the son of testatrix should be considered as entitled thereto.

An estate may pass by mere implication without any express words, "and in general, where any implications are allowed they must be such as are necessary or at least highly probable. * * * A will is construed * * * and expounded rather on its own particular circumstances than by any general rules of positive law." (2 Blackstone's Com. 381.) If the testator's meaning cannot be clearly ascertained we are at liberty, and for the sake of certainty in the possession and transmission of estates generally required, to apply such rules of construction as have by long usage been approved and used. (*Anderson* v. *Messinger,* 77 C. C. A. 179.) The doctrine that the intent of a testator must be the guiding and controlling rule of interpretation requires, not unfrequently, as was said in *Lytle* v. *Beveridge,* 58 N. Y. 592, "a disregard of the usual technical meaning of words and phrases, and, when necessary, such technical meaning must yield to the evident intent of the testator." It was further said in that case: "Rules of construction are resorted to as helps or aids in arriving at the intent of a testator, and ought not to be followed when they lead to results subversive of such intent. There is no rigid rule of law to the effect that words shall only be used in one certain sense, or requiring courts to give language the same interpretation and effect under all circumstances and in every connection. The infinite variety of circumstances that may occur, distinguishing one case from an-

other, in the use of the same words and phrases, renders it impossible to give an absolute and unbending rule for the interpretation of language applicable to all cases." The rule that the intention of the testator must govern is so strong that in seeking for such intention courts are not restrained by unbending technical rules, but may adopt the most liberal construction without much regard to the grammatical structure of the sentences or the precise definition of the words used. These instruments are sometimes made *in extremis* and often drawn by unskillful persons. They are therefore entitled to great indulgence and are treated with greater liberality than any other legal instruments. It frequently happens, in reading a loose and carelessly written will, that the meaning of the testator is perfectly obvious, and yet it may be difficult to explain such meaning by any strict rules of interpretation. (*Ferson* v. *Dodge,* 23 Pick. 292; 40 Mass. 287.) The implication that can be followed in construing a will must rest upon a legal inference and not upon bare conjecture. (*Ferson* v. *Dodge, supra;* O'Hara on Interpretation of Wills, chap. 14, p. 166.) An estate by implication must be apparent on the face of the will and for the purpose of carrying into effect the manifest intention of the testator. *Carr* v. *Porter,* 1 McCord's Ch. (S. C.) *61.

The devise to these grandchildren of the testatrix arises by implication, founded upon expressions in the will from which such an intention on the part of the testatrix is inferred. (*Connor* v. *Gardner,* 230 Ill. 258; 15 L. R. A.— N. S.—73, and note.) The common understanding of the language of the will would convey the meaning that if the son died without children the remainder must go to the other relatives of the testatrix, but just as plainly the meaning is conveyed that in the other alternative,—that is, if the son should leave children,—it was intended that these children should take this remainder. The familiar rule of construction that the inclusion of one alternative is the ex-

clusion of another, or *vice versa,* would tend to confirm this conclusion. (*Anderson* v. *Messinger, supra.*) Not only would this be the meaning given to these words by the ordinary layman, but the lawyer would almost certainly say, as a matter of first impression, that such a construction of the will carried out the plain intent of the testatrix. The construction placed upon this will by the majority opinion of the court would not readily suggest itself on the first reading of the will and certainly was not intended by the testatrix. It is a construction that must be searched for. Does it not require a strained and unnatural meaning to be placed upon the words of the will? Rules of law should not be permitted to thus defeat the intention of the testatrix unless they have been long established and upheld by the great weight of authority. It may be admitted that it is "essential to the security of property that a rule should be adhered to when settled, whatever doubt there may be as to the grounds upon which it originally stood;" (Ram on Legal Judgment, p. 230;) that it is extremely dangerous to shake the authority of decided cases. (Beal on Cardinal Rules of Legal Interpretation, p. 20.) I find no such settled rule, however, upholding the construction placed upon this will by the majority opinion of the court. The precise question here under consideration has never been passed upon by this court, but as will be shown hereafter, cases have been decided by this court in which this question has been discussed, and the reasoning in those cases fairly tends to uphold the construction contended for in this dissent. It is conceded that the decisions in the English courts tend to uphold the conclusion of the opinion, but it is evident from a study of the English authorities that they are not all in harmony on this question and that the rule on this subject has been changed by the modern decisions of those courts. (*Anderson* v. *Messinger, supra.*) The great weight of authority in this country is opposed to the rule of construction laid down in the majority opinion.

It has been held in the English courts that while American decisions will be entitled to great respect, yet they can not be treated as controlling or placed on the same footing as the decisions of their own courts. (Beal on Cardinal Rules of Legal Interpretation, p. 47.) It has been rightly said that the English decisions are only "*quasi* authority" in this country. (Ram on Legal Judgment, p. 293.) The law of this State requires that the common law of England, so far as the same is applicable and, of a general nature, shall be the rule of decision in this State unless repealed by legislative authority. (Hurd's Stat. 1908, p. 485.) The English cases since the Revolution are not regarded as authority. Upon disputed doctrines in our courts they are entitled to respectful consideration, but where the question relates to the construction or effect of written documents they have no greater weight than may be due to the reasons given in their support. *Andrews* v. *Durant,* 11 N. Y. 35. To the same effect are *Cathcart* v. *Robinson,* 5 Pet. 264, and *Koontz* v. *Nabb,* 16 Md. 549.

No decisions have been cited in the opinion of the court that were decided previous to the American Revolution. The earliest of English decisions cited is *Greene* v. *Ward,* 1 Russ. 262, which was decided in 1826, and the latest *Scale* v. *Rawlins,* A. C. 342, in 1892. One of the earliest decisions in this country is *Carr* v. *Green,* 2 McCord, 75, in which the highest chancery court of South Carolina decided, in 1822, after a review of many of the English authorities, that the words of the will, "the rest and residue of my estate to be divided between my grandsons at the age of twenty-one years, but should they die leaving no lawful issue" then the whole to go to others, manifested a plain intention of the testator to provide distinctly "for the issue of his grandsons, if they should leave any, and if the common sense of the community should be consulted on it there would not, probably, be found one man that would hesitate in deciding that this must have been the intention

of the testator." It appears that the court in deciding this, was in conflict with some of the other courts of that State, and when a law was passed creating a new court of appeals, that court, in 1825, reviewed the same facts in the case of *Carr* v. *Porter, supra,* reversing, in effect, the earlier decision in *Carr* v. *Green, supra.* From that day to this the American courts, so far as my attention has been called to them, have given to similar words in wills the construction contended for in *Carr* v. *Green, supra.*

In *Holton* v. *White,* 23 N. J. L. (Zabr.) 330, the will provided that in case "of the decease of my son Eli before the expiration of said lease, then the house and lot called Oak Island, together with its appurtenances, shall descend to my son Andrew and his heirs and assigns forever." In discussing that provision of the will that court said (p. 334): "In the present case the devise over is to Andrew, one of the six children of the testator, on the contingency of Eli's dying before the expiration of the lease referred to in the former part of the will. It is not a limitation over to the heirs-at-law, but to one of the heirs-at-law. If Eli cannot take this property by implication in case he lived beyond the expiration of the lease, the question is, what was to become of it, according to the intention of the testator? He did not mean to die intestate in regard to it, for in addition to his declaration in the introductory part of the will, that he means to dispose of such things as God has blessed him with, he makes distinct mention of these very premises. He did not mean that his heirs general should take it, for he gave it in distinct terms to his son Andrew on a certain contingency which did not happen, and, on the same reasoning, it is clear to my mind he did not mean that it should be sold by his executors. I cannot resist the conviction that the intention of the testator, as gathered from the whole will, was to devise these premises to Eli in case he survived the lease, and that he takes an estate in them by necessary implication."

In *Anderson* v. *Messinger, supra,* the United States Court of Appeals had under consideration the words in a will, "if either of my sons die without lineal descendants the one surviving shall take his estate above bequeathed, and if the survivor dies without lineal descendants, then one-half, both of the decedent's original portion as well as one-half of the portion taken by survivorship, shall go to my brother Peter, the other half to such of my brothers and sisters as may be living at the time of the death of such surviving son," and decided that in case there were lineal descendants the testator intended to prefer them, rather than the collateral branches of his family,—that this was clear by implication.

In *Shaw* v. *Hoard,* 18 Ohio St. 227, in construing the following words in a will: "On the death of either my wife or daughter then the survivor shall have all the property left them by me, and if both die without leaving any heirs of their body, then in that case said property shall be given to my wife's brother, David Campbell," that court held that by fair implication the testator intended to give the property to the issue of his wife and daughter after their decease, if they left issue surviving them.

In *Lytle* v. *Beveridge, supra,* the court of appeals of New York, in construing in a will the following: "I allow my son Joseph to possess by devise of will the farm I now live on, (describing it,) with all the rights and privileges thereunto belonging, as fully and freely as if I had made him lawful conveyance by full covenant during his natural life, but if he leaves no legitimate heirs, then in that case the property according to my will I allow to revert back to my son David, his heirs or assigns forever, without hindrance of any person whatsoever, as fully and freely as if I had given him a lawful conveyance," stated that from the above quoted words the law would imply a devise in fee to the children of Joseph living at the time of his death, and

thus give effect to the intent to provide for them in case there should be any such children.

In *Wetter* v. *United Hydraulic Cotton Press Co.* 75 Ga. 540, a will gave to a daughter, after she arrived at the age of twenty-one, the estate of the testatrix, but provided that "if said daughter should depart this life leaving no issue or lineal heirs, that the whole of the estate herein bequeathed should go and belong to my mother and sister, as tenants in common, and their heirs forever," etc. The court, in construing the will, said that nothing was expressly said as to what effect the existence of the children of the daughter was to have on the course of the property, but the only contingency upon which other persons,—in the one case the mother and sister and in the other the next of kin to testatrix,—can take, was the death of the daughter "without issue or lineal heirs," and continued: "The inference or implication seems to us plainly to be, that if there were such issue lineal or heirs left by the daughter the property should go to them."

Practically to the same effect as the American decisions just referred to are *In re Moore's Estate,* 11 Misc. (N. Y. Delahanty,) 436, *Bentley* v. *Kaufman,* 12 Phila. 435, and *In re McAlpin's Estate,* 60 Atl. Rep. (Pa.) 321. Rood on Wills (sec. 495) also tends to support the same conclusion, where certain English authorities are cited supporting the text, as does also 1 Spence's Equitable Jurisdiction, p. 530.

It will be noted that in most, if not all, of the cases just cited there was in the first instance, by the terms of the will, a devise in fee to a certain person, which devise in fee was cut down to a life estate by later provisions of the will. The reasoning of the majority opinion would necessarily be much stronger in support of the construction that is contended for in that opinion as to such a wording than it would where the will plainly states, as it does here, that in the first instance the first taker is only to have a life estate. In discussing this question, Jarman, in his work on Wills,

(vol. I, 6 Bigelow's Am. ed. *525,) says: "And even where the language of the will necessarily confines the interest of the parent to his life, the children will not generally be held to take by implication. It is extremely probable that the testator intended a benefit to them. But *si voluit non dixit.* But it seems to me that in such a case the court will lay hold of slight circumstances to raise a gift in the children, and thereby avoid imputing to the testator so extraordinary an intention as that the devisee or legatee over is to become entitled if the first taker have no child, but that the property is not to go to the child if there be one, or its parents." Evidently this eminent author thought the English courts had gone further than they ought in holding that a devise by implication should not arise by words similar to those contained in this will. It will be noted that he said it is extremely probable that the testator intended a benefit to them, and that the construction contended for in the majority opinion imputes to the testator an extraordinary intention.

The latest authority that has been called to my attention is *Beilstein* v. *Beilstein,* 194 Pa. St. 152, and decided in 1899. That decision is precisely in point. In construing the following language of a will, "It is my desire that my daughter, Gertie Beilstein, shall receive the income of my property * * * as long as she lives, but should she die without leaving a family" then the remainder to the testator's brothers and sisters, that court held (p. 154) : "The devise over in case Gertie should die 'without leaving a family' is an implied devise to her family if she should leave one. It is only if she does not that the devise over is to take effect, and there is a necessary implication that in the other unexpressed contingency of her leaving a family the estate is to go to them. This is practically assumed without question in the long line of cases on the subject,"— citing authorities. That the construction here contended for was generally understood to be proper by the courts of this country is very clear from Washburn on Real Property,

(vol. 1, 6th ed. sec. 192,) where that author says: "An instance of an estate tail by construction, where there is no direct limitation to the heirs of the donee's body, would be an estate to A, with a proviso that if he shall die without heirs of his body the estate shall revert to the donor or go over to one in remainder. Here, it will be perceived, there was no direct limitation to the heirs of A, and it is too plain for doubt that the donor intended the heirs of his. body should take it at his decease, for he gives it over, or reserves it, in case he has no such heirs, and only in that contingency."

It may be conceded, as stated in the majority opinion, that some of the decisions of the American courts just cited did not all have under consideration the exact question in this case, and it may also be conceded, as suggested, that on some other questions as to the construction of wills, rules of law are laid down in some of those decisions not in harmony with the decisions of this court; but the reasoning in these cases, whether the question under consideration was the exact one in this case or a kindred question, tends strongly to uphold the construction contended for in this dissent. Moreover, as I have stated, the decisions in our own court, while not decisive, are strongly persuasive, and the profession, in reading them, would naturally conclude that this court was inclined to follow the American rather than the English authorities on this subject.

In *Schaefer* v. *Schaefer*, 141 Ill. 337, the will under consideration provided: "I do bequeath to my beloved daughter, * * * the following property (describing it) in trust for her sole use and benefit, and of her children, and their children thereafter. But in the event that my daughter * * * should die and leave no children as heirs to the within mentioned property, then it is my will and desire that all of said property shall go to my brother, Jeremiah Coughly, * * * and to his heirs and assigns." This court, through the late Justice Baker, in construing

this will, stated (p. 344) : "Further evidence of the intention to give said children the remainder in fee is amply afforded by the provision that if appellee 'should die and leave no children, * * * then * * * said property shall go to my brother, Jeremiah Coughly, * * * and his heirs and assigns forever.' The necessary implication from this language is, that if there were children of appellee, then, primarily, the property should go to them and to their heirs and assigns forever." The holding in that case that the children were entitled to the remainder did not rest alone upon the clause of the will last quoted, but it is manifest from the last sentence quoted from Judge Baker's opinion that the court then had no doubt that a devise would necessarily be implied from language such as is contained in the will here in question.

In *King* v. *King,* 168 Ill. 273, where the question as to devises by implication was exhaustively presented in the briefs, the will there under consideration provided: "It is my will that in the event of the death of the wife of said William Jones King, and of his leaving no children surviving him, that then, and in such case, the said trustees, after the death of said William Jones King, shall convey and transfer to my children and their descendants all the estate, both real and personal, then in their hands or remaining undisposed of," etc. In construing this will this court stated (p. 286) : "We think the intention of the testator was that the estate should go to the issue of William Jones King, if he left any." It is true that in that case there were other provisions of the will which tended to uphold the same conclusion, and the court did not rest its opinion solely upon the intention of the testator as drawn from the words quoted.

In *Orr* v. *Yates,* 209 Ill. 222, the will provided that the testatrix devised to Jefferson Orr, trustee, certain described land, "constituting what is commonly known and called the Putz farm, to have and to hold in trust for the

sole use and benefit of Mary Maria Yates, for and during her natural life, and in the event of the death of the said Mary Maria Yates without child or children or descendants of child, then to have and to hold for the sole use and benefit of Lydia Yates, my wife, if she shall be living, during her natural life, and at the death of Lydia Yates, my wife, and Mary Maria Yates, my daughter, (if said Mary Maria Yates dies without child or descendants of child,) the fee to the said last described tract of land known as the Putz place shall be equally divided between my brothers and sisters and their heirs and assigns," etc. In discussing the will this court said, speaking by Mr. Justice Wilkin (p. 238) : "The only uncertainty is as to what shall be done with the trust property in case Mary Maria Yates dies leaving issue. Will it go to such issue in fee, or will it fall back into the estate as intestate property and descend to the heirs of William H. Yates? Our opinion is that it will vest in the issue of Mary Maria Yates. That seems to be the fair inference from the language used. If she dies without issue, then the trust continues during the life of Lydia Yates and the fee vests in the brothers and sisters. If Mary Maria Yates dies leaving issue, that is clearly the end of the trust, and it seems to be the intention of the testator that the fee shall vest in her issue. This construction is in harmony with the rule of law that where a party disposes of his estate the presumption is that he intended to dispose of all of it, and the courts will so construe the will as to leave no part of the estate as intestate property."

While it is conceded that in none of these three cases did the decision turn upon wording precisely like the one in the will here under consideration, yet I am confident that the profession generally adopted the view that in those decisions (and others of a similar nature where the reasoning is not quite so strong or clear) the construction insisted upon in this dissent was intended to be laid down. In note 2 to section 207 of Kales on Future Interests that au-

thor says: "Gift to issue of first taker raised by implication from gift over if life tenant leaves no issue,"—citing *Orr* v. *Yates, supra,* and other Illinois cases.

i In the recent case of *Stisser* v. *Stisser,* 235 Ill. 207, this court construed the following words of the will: "It is my will that should either of the above named children (naming them) die without issue," then and in that case the property shall be disposed of in a certain way, and stated (p. 210): "We think under said clause the remainder, after the death of either of said life tenants, in the property described in said clauses 4, 5 and 6 was devised, by necessary implication, to the issue of the respective life tenants, if they had issue." This statement may be considered dictum, as the question was not necessary for the decision of the case or exhaustively discussed in the briefs; still the reasoning there, in connection with the former decisions of this court, might almost be held judicial dictum as distinguished from mere *obiter dictum,* and as that rule was laid down by this court, speaking by the late Justice Wilkin, in *Law* v. *Grommes,* 158 Ill. 492.

The decided weight of American authority is against the construction of the will upheld by the majority opinion of the court. If the English and American authorities are in conflict, surely the American courts ought to follow the American decisions rather than the English, unless sound reasoning and principle require the following of the English authorities; but when not only the American authorities are substantially, if not entirely, unanimous on the question, but also the reasoning in the decisions of our own court tends to support the construction given to this will by the chancellor in the court below, then before this court should hold to the contrary we ought to be convinced that the rule of the American decisions is not sound in principle and is manifestly mischievous in its results. This court has time and again laid down the doctrine that the intention of the testator as stated in the will must control when not

against public policy or public law. It is the courts' duty
to construe wills as they find them, and not to make them.
(*Illinois Land and Loan Co.* v. *Bonner,* 75 Ill. 315.)   But
courts may, in effect, make wills for parties by giving them
a mistaken interpretation.   While the doctrine of implica-
tion must be resorted to cautiously in the construction of
wills, the court should not hesitate to resort to that doctrine
when thus, only, can the manifest intention of the testa-
tor be carried out.   Does not the construction given to the
words by the majority opinion rest to a far greater extent
on conjecture than does the construction given by the trial
court?   The testatrix, without question, intended that her
son should only have a life estate in her property, with the
right to control and manage it and with the right to use
sufficient of the proceeds for his support and comfort; but
is it not a most violent inference that she intended that if
he had children he should have a fee simple title instead of
a life interest?   The intention of a testator "is to be col-
lected from the whole will taken together.   Every word is
to have its effect and every word is to be taken accord-
ing to the natural and common import." (*Thellusson* v.
*Woodford,* 4 Ves. 329.)   The rule just quoted from this
early English authority has always been followed in this
court.   Applying it in this case and giving to the words of
this will their natural and common meaning, it should be
held that the intermediate estate in remainder was intended
to go to the grandchildren of the testatrix, if any such were
born to her son.   To give the estate to such issue leaves
none of it intestate and will do no violence to the language
of the will, but will carry into effect the purpose of the tes-
tatrix clearly implied from the language she has used in
that instrument.

   The only justification, it seems to me, for construing
the will in accordance with the rule laid down in the opin-
ion of the court is the decisions of the English courts
during the past century.   Those courts seem to apply fixed

rules to the construction of devises to an extent not generally adopted in this country. (*Anderson* v. *Messinger, supra.*) In following their decisions on this question are we not adopting an arbitrary rule for its own sake rather than to carry out the intent of the will, thus defeating instead of promoting justice? By so doing are we not imputing to the testatrix the "extraordinary intention" (1 Jarman, *supra,*) that other and more distant relatives are to become entitled to the remainder if the son has no children, but that the remainder is not to go to these children, if any there be? Is it not "too plain for doubt" (1 Washburn, *supra,*) that the testatrix intended these grandchildren to take this remainder?

HAND and FARMER, JJ.: We concur in the dissenting opinion of Mr. JUSTICE CARTER.