(No. 15344.—Decree affirmed.)
JOHN N. NELMS, Defendant in Error, *vs.* RALPH TURNER, Plaintiff in Error.

*Opinion filed June 20, 1923.*

1. WILLS—*when annuity is not a charge upon the land—trusts.* Where a testator gives certain land to a devisee for life with a contingent remainder over, and provides that a certain sum shall by the executor of the will be paid annually to the devisee's father "out of the income from said real estate" during the life of the devisee, the payment of the annuity is not a charge upon the land and the executor takes no interest in the land or the reversion as trustee.

2. SAME—*when the question of construction of a will cannot be raised in suit for specific performance.* Where an executor has filed a bill to construe a will so as to give him a trust estate in certain land devised to a life tenant, and a decree, from which no appeal is taken, is entered finding that the executor has no interest or title and ordering him to deliver possession to the life tenant, no question as to the executor's interest under the will can be raised by the defendant in a subsequent suit for specific performance brought by the life tenant's successor in title, in whom the life estate and the reversion have merged by conveyances.

3. SAME—*when residuary devise in codicil does not include reversion not disposed of in will.* A residuary devise in a codicil

whereby the testator gives to his wife for life "all real estate not mentioned or included in" his last will and testament, should not be construed to include the reversion in fee of land devised in his will to a life tenant with a contingent remainder over.

4. SAME—*when contingent remainder is destroyed by convey-ance.* Where a testator devises a life estate in certain land, with a remainder over to certain devisees in the event the life tenant "should die leaving no child or children then living," a conveyance made in 1920 by the life tenant, who was the sole heir of the testator, merges in the grantee both the life estate and the reversion in fee and enables him to convey a fee simple title.

WRIT OF ERROR to the Circuit Court of Christian county; the Hon. WILLIAM B. WRIGHT, Judge, presiding.

FRANK P. DRENNAN, for plaintiff in error.

W. H. NELMS, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Christian county by defendant in error, John N. Nelms, against plaintiff in error, Ralph Turner, praying for the specific performance of a contract for warranty deed for about 160 acres of farm land in Morgan county. The trial court entered a decree for specific performance, and the case has been brought here by writ of error.

On October 26, 1922, Nelms, being the owner of the land in question, entered into a written agreement with Turner whereby Nelms agreed to sell and convey the land to Turner by good and sufficient warranty deed, and Turner agreed to purchase the land and pay for the same $16,000 "upon delivery to him of a good and sufficient warranty deed and an abstract showing a merchantable title in fee simple in the party of the first part." When Nelms presented the warranty deed and abstract Turner objected on the ground that Nelms did not have the fee simple title because of certain matters in the title arising out of the construction of the will of William H. Cox, who formerly

owned the land. The will of Cox was probated in the county court of Morgan county about 1912. The first clause thereof directed the payment of all just debts and funeral expenses, and the second clause made certain specific legacies of money and chattels. The third, fifth, sixth, seventh, eighth, ninth and tenth clauses gave various tracts of land to different people, and neither of these various sections refers to the land here involved or will assist to any appreciable extent in the solution of the question under consideration. The land in question is devised by the fourth clause of said will, which reads:

"*Fourth*—I give and devise to Frank W. Thomas, son of Jerry Thomas, the following described real estate upon the following conditions, to-wit: [Here describing the land in question] to have and to hold the same during his lifetime; and my executor as hereinafter named is to pay to Jerry Thomas, the father of the said Frank W. Thomas, out of the income from said real estate, during the life of the said Frank W. Thomas, the sum of two hundred ($200) dollars annually, and if the said Frank W. Thomas should die leaving no child or children then living, said real estate is then in that event to go to and vest in the children of Julia Woods and Emma Alderson, share and share alike."

These clauses constitute the substance of the will, with the exception of the last clause, appointing Joe B. Lombard executor and revoking former wills.

On November 10, 1911, Cox made a codicil to his will, of which the portions directly affecting this case read as follows:

"*Second*—I devise and bequeath all real estate of which I may die seized and not mentioned or included in my last will and testament heretofore made, and of which this is a part, to my wife for life.

"*Third*—After the death of my wife, what remains of my estate given to her I direct that the same be held in trust by my executor therein named or his successor in

trust, the interest of which is to be paid annually in equal parts after the death of my wife, as follows: [Here follows a designation of the beneficiaries.] The principal fund to be paid to them at the age of twenty-one years. And my executor is hereby empowered to sell all real estate remaining after the death of my wife and convert the same into cash, and all personal property, in order to carry out the trust herein created."

So far as we are advised there appears to be no dispute as to any question of fact involved, the sole question being as to the legal effect of the will and codicil and subsequent deeds.

On February 3, 1920, Frank W. Thomas and his wife, and Jerry M. Thomas and his wife, quit-claimed the premises in question to George W. Caruthers, who later deeded them to John N. Nelms.

Defendant in error argues that under a proper construction of the will and codicil, as Frank W. Thomas was the only heir of the testator and as he had only a life estate in this farm under the will, the reversion in fee, pending the vesting of the contingent remainder, descended to Thomas, and that the life estate merged in the reversion by the deed to Caruthers and the contingent remainders were destroyed and Caruthers took a fee simple title, which has come down to defendant in error, as was held by this court in *Bond* v. *Moore,* 236 Ill. 576, and cases following that decision on this point, including *Messer* v. *Baldwin,* 262 Ill. 48, *Smith* v. *Chester,* 272 id. 428, *Blakeley* v. *Mansfield,* 274 id. 133, and *Benson* v. *Tanner,* 276 id. 594. Plaintiff in error, on the other hand, argues that the reversion did not descend to Frank W. Thomas, because the fourth clause of the will provides that the executor is to pay to Jerry M. Thomas, father of Frank, out of the income from the real estate, during Frank's life, $200 annually, and because the codicil gives all the real estate not mentioned or included in the will to testator's wife for life, and directs that what remains

after her death shall be held in trust by the executor and
sold by him; that therefore the reversion under the will
and codicil vested in the executor, subject to the interests
of Jerry M. Thomas and the testator's widow.

Did the provision in the will that the executor shall pay
Jerry M. Thomas $200 a year from the income of the farm
place the title to the farm in the executor or in some other
manner prevent the reversion from descending to Frank W.
Thomas? We are of the opinion that this provision does
not have that effect. The $200 per year is payable from the
income and hence is not a charge upon the land in ques-
tion. (*DeHaven* v. *Sherman*, 131 Ill. 115; *Einbecker* v.
*Einbecker*, 162 id. 267; 2 R. C. L. 6; 3 Pomeroy's Eq.
Jur.—3d ed.—sec. 1134.) The meaning of the will appears
to be that Frank W. Thomas would be required to pay the
executor out of the income of the farm, each year, $200,
and the executor should pay it to Jerry M. Thomas, but
that it would not be a charge upon the land itself. As a
practical question in the settlement of an estate this would
be an indirect and cumbersome proceeding, but it is what
the will provided. However, Jerry M. Thomas and his wife
have quit-claimed their interest. In any event, we do not
think the testator intended to give any interest in the land
in question to the executor as trustee.

Moreover, it appears from the record that previous to
the filing of this bill for specific performance, proceedings
were had in the circuit court of Morgan county by the ex-
ecutor and trustee to construe this will, wherein the execu-
tor alleged that by the fourth clause of the will the prop-
erty was devised to him and asked to be appointed as trus-
tee. He further alleged that Jerry M. Thomas, the father
of Frank, was threatening to take possession of the land,
claiming that the executor had no trust estate therein. To
this bill the children of Julia Woods and Emma Alderson
were made parties defendant, and also Frank and Jerry M.
Thomas. Frank W. Thomas by guardian filed a cross-bill,

wherein he alleged he held the land free from any trusts, and prayed that Joe B. Lombard, executor, be ordered to quit possession and deliver to him the premises, and that the title be decreed to be in cross-complainant free from any trust, and that he be decreed to have the right to collect the rents and profits of the premises. To this cross-bill answers were filed, and a decree was entered in that court ordering the executor to deliver possession to the guardian of the cross-complainant, and the executor was denied the relief prayed in his bill, the court holding that he had no title to the premises and no right to possession. That decree was entered in February, 1917, and was not appealed from, and it therefore appears that defendant in error is right in his contention that the construction of the will as to the interest of the executor cannot be raised here in this new proceeding.

We do not understand that counsel for plaintiff in error argues very strenuously that this provision of the will indicates strongly that the executor took a legal estate, but he does earnestly contend that the codicil gives the reversion in this land to the trustee under the will, and that therefore, under the reasoning of this court in *Matthews* v. *Andrews,* 290 Ill. 103, the contingent remainder could not be merged with Frank W. Thomas' life interest by the deed to Caruthers. The decision of this question rests upon whether the wording of the codicil giving "all real estate not mentioned or included in" the last will to his wife for life and after that to the executor in trust would include this reversion. We are of the opinion that it was not intended by the testator to include the reversion in this land in the provisions of the codicil. When the testator by the second clause of his codicil devised "all real estate not mentioned or included in" his last will and testament, in our judgment he intended to include only the fee simple title to any tract of land that had not been particularly described or mentioned in the original will, and did not intend to in-

clude reversions or other partial interests in any of the tracts of land which he had specifically described, as he had described this land in section 4 of the original will. As was said by this court in *Parish* v. *Dewey*, 298 Ill. 345, on page 350: "It is manifest * * * that it was not the intention of the testator that the reversion in the land devised to his children should be sold by the trustee, and that when he referred to land 'disposed of above or conveyed by this will' he excepted from the trust the land itself included in the devise and not merely the interest or estate devised to his children." This reasoning in that case applies with full force and effect here and is directly in point as to the question whether the second clause of the codicil includes this land.

It is apparent from the reasoning in *Parish* v. *Dewey*, *supra*, that the intention of the testator here is controlling as to whether or not this reversion was intended to be included, and it seems clear from the wording of the second clause of the codicil that the testator did not intend this reversion to be in any way affected by the provisions of the codicil. The chancellor found that under the will of Cox Frank W. Thomas took a life estate in the land here in question and that a contingent remainder was limited to vest at Thomas' death; that pending the vesting of the remainder the reversion in fee descended to Thomas; that the quit-claim deed from him to Caruthers conveyed both the life estate and the reversion in fee and that the life estate merged in the reversion; that the contingent remainder created by the will was defeated and destroyed and Caruthers was vested with a fee simple title, which fee simple title he thereafter conveyed to Nelms. The chancellor was correct in his findings on this point in the decree.

The decree of the circuit court will be affirmed.

*Decree affirmed.*