## BOYKIN v. SPRINGS.

DOWER.—Where a husband executes with devisees a covenant to exchange lands, which exchange the court of equity must authorize, and after going into possession under such, conveys his equitable interests with general warranty to another, and the Court orders the lands conveyed to his grantee, his title was not such as would give his wife right of dower.

MR. JUSTICE GARY *dissents.*

Before GARY, J., Kershaw, July, 1901. Reversed.

Petition in probate court by Mary C. Boykin against Leroy Springs and Charles J. Shannon, Jr., for dower. The Circuit decree reversing probate court is as follows:

"This cause came before me at the June term, A. D. 1901, of the Court for Kershaw County, on an appeal from the

probate court of said county. It is a suit for dower brought by Mary C. Boykin, who is the widow of Edward M. Boykin, late of Kershaw County. The only point passed upon by the probate judge was as to the seizin of Edward M. Boykin, and as to that he announced the conclusion 'that Edward M. Boykin was not at any time seized in fee of the lands described in the petition or any part thereof, and his widow is not entitled to dower in said lands or any part thereof.' The grounds of appeal served by the plaintiff, demandant in dower, question in different forms the correctness of this ruling and decree. Upon the hearing of the appeal there was submitted to me some oral evidence, which had been taken down in writing by the probate judge, and is not denied or contradicted. An instrument entered into between W. W. Lang, Sarah Lang, Serena C. Lang, Mary E. Lang, Sally W. Lang, C. A. Boykin, K. L. Boykin and Edward M. Boykin, dated August 1st, 1846. A conveyance of real estate from C. A. Boykin, K. L. Boykin, J. A. Boykin and Edward M. Boykin to Thomas Lang, dated January 15, 1849; and the bill, reports of commissioner, orders of the chancellor in equity for Kershaw District to Thomas Lang, made in pursuance of such orders, in a proceeding instituted in the court of equity for Kershaw District by Wm. W. Lang and wife *et al. v.* C. A. Boykin *et al.,* in the year 1850. These papers all concern the same real estate, which is that out of which the demandant claims dower. It may be said that the facts in this case are admitted, as they are not disputed, and the questions involved arise upon the proper legal construction of the written instruments offered in evidence. The land in which dower is claimed, originally belonged to Duncan McRae, and in the division of his estate, under his will, fell to his daughter, Mrs. Sarah Lang, wife of Wm. W. Lang. All the parties to this controversy hold and claim under this common source.

"The question submitted to me, under this appeal from the judgment of the probate court, is, did Edward M. Boykin, the husband of demandant in dower, have such an estate

or interest in fee, in the land mentioned in petition, as that his widow is entitled to dower therein? Mary C. Boykin, the plaintiff, demandant, was, on August 1st, 1846, the wife of Edward M. Boykin, and is now his widow. My construction of the instrument in writing, entered into between W. W. Lang, Sarah Lang, Serena C. Lang, Mary E. Lang, Sally W. Lang, C. A. Boykin, K. L. Boykin and Edward M. Boykin, on August 1st, 1846, is that it passed an estate in fee simple to the said C. A. Boykin, K. L. Boykin, Edward M. Boykin and John A. Boykin. Apt words are used to pass such an estate, and there is nothing in the instrument showing a contrary intention. The Boykins above named, on January 15, 1849, executed to Thomas Lang an absolute deed of conveyance in fee simple of same land, with full covenants of warranty, but there is no renunciation of dower by Mary C. Boykin, the wife of Edward M. Boykin. I should have remarked above that Edward M. Boykin went into possession of the land out of which dower is demanded, under the conveyance of August 1st, 1846, and cultivated the land, remaining in possession until the conveyance to Thomas Lang, in January, 1849. It would appear that the parties interested came to the conclusion that it was best to apply to the court of equity to confirm what had been done, and validate an exchange of property which had been made, and the bill of W. W. Lang and wife *et al. v.* C. A. Boykin, *et al.,* above referred to, was filed.

"The defendants in this action for dower contend that, because the commissioner in equity was directed to and did convey the land to Thomas Lang under these proceedings in equity, the conclusion follows that the Boykins were never seized in fee of the land, and that Thomas Lang, under whom Springs & Shannon claim, derived his title from the commissioner in equity and not from the Boykins. But an examination and proper construction of these proceedings in equity will show that the lands were treated and considered therein as having been conveyed in fee by the Langs to the Boykins. The status of Thomas Lang and his right to the

lands is based upon the fact that he had derived title from the Boykins; this title of the Boykins is recognized by all parties, and the land is ordered to be conveyed to Thomas Lang as the property of the Boykins. But even if it had been attempted in these proceedings to put a different construction upon the dealings between the Langs and Boykins as to the land, Mary C. Boykin, then the wife of Edward M. Boykin, could not be affected thereby, as she was not a party to the bill in equity. Under the title derived by him from the Boykins, Thomas Lang went into possession of the land in 1849, and he and those holding under him, including Springs & Shannon, the defendants in this proceeding in dower, have held the land ever since.

"My conclusion, therefore, is that Edward M. Boykin, the husband of the plaintiff, demandant in dower, was seized of an estate in fee simple in an undivided interest of one-fourth ($\frac{1}{4}$) in the lands described in the proceedings herein, during his coverture with the plaintiff, demandant, and that she is entitled to dower therein."

From this decree the defendants appeal.

*Mr. W. M. Shannon,* for appellant, cites: 6 Rich. Eq., 72; 20 S. C., 550; 25 S. C., 337; 22 S. C., 446; 1 Scrib. on Dow., 359.

*Messrs. B. B. Clarke* and *J. T. Hay,* contra, cite: 25 S. C., 337; 22 S. C., 457; 5 Ency., 1 ed., 892; 9 Rich., 378; 12 S. C., 62.

This case was argued at the November term, 1902; but on account of a difference of opinion between the three Justices then on the bench, no judgment could be pronounced, and a reargument was ordered during the April term, 1903.

June 5, 1903. The opinion of the Court was delivered by

MR. JUSTICE JONES.   The plaintiff, as widow of Edward
M. Boykin, deceased, instituted proceedings in the court of
probate for Kershaw County, demanding dower in certain
lands in the possession of the defendants.. The probate court
denied the claim, holding that demandant's husband was not
at any time during coverture seized in fee of the land de-
scribed, but had only an equity therein.   The Circuit Court,
on appeal, reversed the probate court, holding that demand-
ant's husband was seized in fee of the one-fourth interest in
said land, and decreed that plaintiff was entitled to dower
therein.   The decree of the Circuit is officially reported
herewith.

From this decree the defendants now appeal on exceptions
which raise practically but one question, whether demand-
ant's husband was ever, during coverture, seized of such an
estate in the land as would entitle plaintiff to dower therein.
It appears that the land in question was originally owned by
Duncan McRae, who by his will in 1824 devised the same to
his daughter, Sarah Lang, during her natural life, and after
her death to the heirs of her body surviving her.   Sarah
Lang was the wife of W. W. Lang, and at the time of the
proceedings hereinafter mentioned had eight children, four
of whom were of age, viz: Serena C., Mary E., Sally W.,
Duncan M., and four, who were minors, viz: J. B., William,
Kitty B. and Scota McRae.   On the 21st day of August,
1846, Sarah Lang, with her husband and the three first
named children, entered into a covenant with Edward M.
Boykin (demandant's husband), C. A. Boykin and K. L.
Boykin.   The Boykins owned certain lands in Alabama, and
it was desired by the parties to affect an exchange of lands
so that the Langs should take the Alabama lands and the
Boykins take the South Carolina lands.   The covenant was
as follows:

"Whereas the undersigned, William W. Lang, is in the
use and occupation of a certain Real Estate situated on the
West side of the Wateree river, in the District and State
aforesaid (hereinafter more particularly described) which

has been devised by the undersigned Sarah Lang, from the last Will and Testament of her late father Duncan McRae, which is therein limited to the said Sarah Lang during her natural life and from and after her death to the heirs of her body, her surviving, and of those remaindermen, Serena C. Lang, Duncan M. Lang, Mary McRae Lang, and Sally W. Lang, (children of the said William W. Lang and Sarah Lang) are now of full age; and whereas the undersigned, Charlotte A. Boykin, John A. Boykin, Edward M. Boykin and Kitty L. Boykin, heirs-at-law of the late John Boykin, are seized and possessed of certain Real Estate, situated in the State of Alabama, in the Counties of Wilcox and Dallas, (hereinafter more particularly described) ; and whereas the said parties have agreed to exchange the Real Estate aforesaid.   Now therefore know all men by these presence, that in consideration of the premises and covenants and agreement of the parties of the second part hereinafter set fourth, the said William W. Lang, Sarah Lang (his wife,) Serena C. Lang, Duncan McRae Lang, Mary McRae Lang, and Sally W. Lang, parties of the first part to those presents, for themselves and in behalf of the other remainderman (not of age) under the said Will of Duncan McRae, deceased, intending to remove to the State of Alabama, have covenanted and agreed, and do hereby covenant and agree, to and with the said Charlotte A. Boykin, John A. Boykin, Edward M. Boykin and Kitty L. Boykin, parties to the second part to these presents, as follows, to wit: The said parties of the first part do hereby grant, bargain, sell and release to the said parties of the second part, their heirs and assigns, all and singular the said premises, first above mentioned, being that plantation or parcel of land situate on the west side of the Wateree river, designated as No. 2, (two,) in the partition of the land of the late Duncan McRae, among the remaindermen entitled thereto, under and by virtue of his last Will and Testament, having such form, marks, buttings and boundaries as are represented on a plat of survey, a copy whereof has been executed by Colin McRae, dated December the first,

eighteen hundred and forty-three; together with all the interest and shares of the said Sarah Lang in any other parcel of land whatever that may be situated on the West side of the Wateree river to the which present possession of, she may be entitled under the said last Will and Testament of her father, the late Duncan McRae. And the said parties of the first part do hereby further covenant and agree to and with the said parties of the second part that they will without unnecessary delay seek the aid of the proper Court to enable them to convey and assure to the said parties of the second part the fee simple estate, in and to all and singular the said several premises last above mentioned, free from any estate in remainder or other incumbrance. And in consideration of the premises the said parties of the second part do hereby covenant and agree, to, and with the said parties of the first part, that, so soon as they, the said parties of the second part, are assured in the fee simple estate in and to the said last mentioned several premises, they will convey to the said parties of the first part, or any of them, or to any other person for them, either in fee simple or subject to limitations of the Will of the late Duncan McRae, as applicable to the said last mentioned Real Estate and as a substitute for the same, all and singular the said plantation situated in the State of Ala. and in the Counties of Wilcox and Dallas now in the occupation of the said parties of the second part, as a portion of the Estate of the late John Boykin, represented by a plat hereunto annexed, marked 'A' Consisting of sundry parcels of land situated in range 10 North Township 12 & 13 west, bounded on the South by lands of the Estate of William C. Clifton, West by lands formerly belonging to Major Betts now belonging to the Estate of William C. Clifton, North by lands belonging to Samuel Dennis; East by lands belonging to Mrs. Capehart, containing Fifteen Hundred acres more or less; together with the dwelling house and the lot conveyed by William C. Clifton to Charlotte A. Boykin adjoining the House tract of the late William C. Clifton; and for the faithful performance of the said several Covenants

and agreements the said parties of the first part and second part do bind themeslves, each to the other, in the sum of Fifteen thousand dollars, as stipulated damages, to the payment whereof, they do hereby bind themselves, their Heirs, Executors, Administrators and Assigns. And it is hereby further agreed by and between the parties aforesaid that possession of the premises hereby intended to be conveyed to the respective parties to these presents, shall be placed in possession of each party on or before the first day of January, eighteen hundred and forty-seven.

"Witness our hands and seals this twenty-first day of August, in the Year of our Lord, One thousand eight hundred and forty-six.

|  |  |  |
|---|---|---|
| Signed | W. W. Lang, | L. S. |
|  | Sarah Lang, | L. S. |
|  | Serena C. Lang, | L. S. |
|  | Mary E. Lang, | L. S. |
|  | Sally W. Lang, | L. S. |
|  | C. A. Boykin, | L. S. |
|  | K. L. Boykin, | L. S. |
|  | Edw. M. Boykin. | L. S." |

It appears that Edward M. Boykin went into possession of the land in question in 1847, and on the 15th day of January, 1849, the Boykins, including demandant's husband, executed to Thomas Lang a deed with general covenant of warranty, conveying said land, together with all their right and interest under the said covenant. Subsequently proceedings were instituted in the court of equity to perfect the exchange of lands as covenanted for, and on June 12, 1850, the Court, having been satisfied that the heirs of John Boykin, deceased, had transferred their right to Thomas Lang, ordered that he be substituted in the place of the said heirs of John Boykin, deceased, in receiving titles to the land in question, and that the commissioner execute to Thomas Lang a conveyance of said land to be delivered when the Boykins had executed the deed of the Alabama lands to Sarah Lang and her children, under the same limitations as provided in the will of

24—66

Duncan McRae. After this the Boykins made the deed to Sarah Lang and her children as provided for, and on December 7th, 1850, the Court ordered the commissioner to deliver the commissioner's deed to Thomas Lang, as the substitute of the Boykins. The plaintiff was the wife of Edward M. Boykin at the time of the execution of the said covenant to exchange lands, and at the time of the delivery of the commissioner's deed to Lang. Demandant's husband died in November, 1891, and this action was commenced in 1900.

Dower exists in this State as at common law. "Dower at common law is an estate for life to which the wife is entitled on the death of the husband in the third part of the legal estates of inheritance in lands and tenements of which the husband was seized in deed or in law, in fee simple or in fee tail, at any time during coverture, and to which any issue which the wife might by any possibility have been heir." 10 Ency. Law, 2d ed., 125. As stated in *Secrest* v. *McKenna,* 6 Rich. Eq., "Dower is a legal right and can attach only on a legal seizin of the husband during coverture.' We do not agree with the Circuit Court that demandant's husband acquired an estate of inheritance in the land in question under the instrument set forth herein. This instrument, construed as a whole, is not a present grant in fee, but a covenant to grant in fee in exchange of lands, to be consummated when the proper court, whose aid was to be thereafter invoked, would enable the Langs to convey and assure the fee.

It must be noticed that, under the will of Duncan McRae, Sarah Lang was life tenant and her children were contingent remaindermen of said lands. *Faber* v. *Police,* 10 S. C., 376. The covenant was signed by three of these eight remaindermen, of whom four of these not signing were minors. A contingent remainder, technically speaking, is not an estate in lands, but is the possibility of one. If the remaindermen be ascertained, it is a possibility coupled with an interest, and it is devisable, transmissible, and in equity assignable; but if the remaindermen be not ascertained, such bare possibility

is not capable of devise, transmission or assignment.  20
Ency. Law, 849; *Alston* v. *Bank,* 2 Hill Eq., 235; *Round-
tree* v. *Roundtree,* 26 S. C., 451.   A court of equity, how-
ever, in a proper case made, and with the proper parties
before it, may convey the fee disposing of all contingent
interests therein, and it was doubtless in view of this that
the parties covenanted to convey lands in exchange when
enabled to do so by the Court.   Whatever rights or equities
Edward M. Boykin had under the covenant, they did not
amount to a seizin of a legal estate of inheritance.   His
possession of the land in 1847 and 1848 was doubtless under
the last clause of the covenant stipulating that possession of
the lands should be given to each party by January 1, 1847;
but such possession did not constitute seizin, in the sense
of the law of dower.   The agreement of the life tenant,.
Sarah Lang, who had right of possession, was all sufficient to
put the Boykins in posession, pursuant to the proposed plan
of effecting an exchange of lands, but as a life estate is
not an estate of inheritance, nothing that the life tenant could
do would confer an estate of inheritance.   The fee in the
land in question did not pass until the Court, by its commis-
sioner, conveyed the same in 1850; but, unfortunately for
plaintiff's claim, the fee was not conveyed to demandant's
husband, but to Thomas Lang, the assignee of the plaintiff's
husband's rights and equities under the said covenant.   The
case of *Secrest* v. *McKenna,* 6 Rich. Eq., 72, decides that
"where one enters under a written contract to receive titles
on payment of the purchase money, and after payment under
a bill for specific performance, to which his creditors are
parties, the premises are sold as his property for the payment
of his debts, his widow, after his death, will not be entitled
to dower therein, he never having had a legal seizin."   So,
in this case, the claim of dower cannot be supported because
demandant's husband never had legal seizin.

The judgment of the Circuit Court is reversed, and the
judgment of the probate court is affirmed.

MR. JUSTICE GARY *dissenting.* As I am unable to concur in the conclusions expressed by the majority of the Court, I will state briefly the reasons for my dissent. Under my view of the case it is not necessary to determine whether the interests which the Langs took under the will of their grandfather, Duncan McRae, were vested or contingent.

On the 15th of January, 1849, E. M. Boykin (husband of the plaintiff), Charlotte A. Boykin, K. L. Boykin and John A. Boykin, executed a conveyance in the usual form with a general covenant of warranty to Thomas Lang of the land in which dower is claimed. His Honor, the Circuit Judge, found as a fact (to which finding there was no exception) that "E. M. Boykin went into possession of the land out of which dower is demanded under the conveyance of August 1st, 1846, and cultivated the land, remaining in possession until the conveyance to Thomas Lang in January, 1849." The Circuit Judge also found as a fact (to which finding there was no exception) that "under the title derived by him from the Boykins, Thomas Lang went into possession of the land in 1849, and he and those holding under him, including Springs and Shannon, the defendants in this proceeding in dower, have held the land ever since."

.. In the case of *Lessly* v. *Bowie,* 27 S. C., at page 197, the Court uses this language: "In a sale of lands there is certainly no implied warranty as there may be in reference to personalty. There is no such thing as a failure of consideration arising out of a contract implied or, as it is sometimes expressed, the equitable condition of sale. A purchaser must protect himself, if at all, by covenants in writing, out of which all his rights of defense must come, except, perhaps, in the case of fraud. *Mitchell* v. *Pinckney,* 13 S. C., 204. This defendant did protect himself by a deed of general warranty, which since our act of 1795 has been interpreted to embrace all the covenants used in conveyances of land prior to that time, viz: that the vender is seized in fee; that he has a right to convey; that the vendee shall quietly enjoy, and that free from all encumbrances, and also

it seems for further assurances, see *Jeter* v. *Glenn,* 9 Rich., 374." The Court also says that an outstanding claim of dower is in the nature of an encumbrance, and is covered and guarded against by the covenant "against encumbrances," embraced in the general warranty. The Court also decides that an outstanding paramount title is a breach of another covenant embraced in the warranty, to wit: that the vendor was seized in fee, and that it cannot be made the basis of relief as long as the purchaser remains in the quiet enjoyment of the land.

In 5 Am. & Eng. Ency. Law, 1st ed., 435, the rule is thus stated: "If a deed with covenant of warranty is given conveying only a possibility, when the possibility becomes a vested estate, the grantor will be estopped from denying the title of his grantee to the land." In *Reeder* v. *Craig,* 3 McC., 411, the Court says: "If a man sell land to which he has no title and afterwards acquire a title, he is estopped by his first deed to say he had no title at the time he sold." In *Robertson* v. *Sharpton,* 17 S. C., 592, the proposition stated in *Reeder* v. *Craig, supra,* is reaffirmed *ipsissimis verbis.* In *Harvey* v. *Harvey,* 26 S. C., 609, the Court says: "Where parties hold title under another, they cannot deny that such person once had a title, but they can dispute any present title in him." See, also, *Rhett* v. *Jenkins,* 25 S. C., 458. In *Irvine* v. *Irvine,* 9 Wallace, 617, the Court uses this language: "When one makes a deed of land covenanting that he is the owner, and subsequently acquires an outstanding and adverse title, his new acquisition enures to the grantee on the principle of estoppel." In *Jenkins* v. *Collard,* 145 U. S., 560, it is decided, where a grantor having no present estate in the premises made his deed containing the covenants of seizin and general warranty, the same legal effect must be given to such covenants upon future acquired interests as if at the time of warranty the warrantor had had such interests. That warranty estopped the grantor and all persons claiming under him from asserting title to the premises against the grantee or his heirs or assigns, and from

conveying it to other parties. In *Washabaugh* v. *Entriken,* 34 Pa. St., 74, the Court said: "If a person without title sell a tract of land and subsequently acquire title to an undivided portion of it by devise from the real owner, such title will enure to the benefit of his grantee." To the same effect see *Clark* v. *Baker,* 14 Cal., 628, *et seq.*

These authorities show that Thomas Lang and those claiming under him are estopped, even as against E. M. Boykin, from interposing the objection that he was not seized in fee, as they have never been disturbed in their possession. For a stronger reason they are estopped as against the plaintiff, as dower is a favored claim in law. Even conceding that E. M. Boykin was not seized in fee at the time the land was conveyed to Thomas Lang in 1849, nevertheless the fee thereafter was conveyed to him under judicial proceedings at the instance of E. M. Boykin and the other parties in interest. As he entered into possession under the deed of conveyance executed in 1849 by E. M. Boykin and others, and as his grantees have not been disturbed in their possession, they are not in a position to deny that E. M. Boykin was seized in fee, and, therefore, cannot dispute the claim of dower on that ground.

I, therefore, think the judgment of the Circuit Court should be affirmed.