## 9225

### BOYCE v. MOSELY ET AL.

#### (86 S. E. 771.)

DEEDS. CONSTRUCTION. LIMITATIONS OF ESTATES. REMAINDERS. TRUSTS. EVIDENCE. ESTOPPEL. ISSUES.

1. LIMITATIONS OF ESTATES—DEEDS—CONSTRUCTION.—Where a grantor unfamiliar with the vernacular of the law, uses words which he did not understand, they will be interpreted in accordance with the canons of the law.

2. LIMITATIONS OF ESTATES — DEEDS — CONSTRUCTION. — As a reversion arises by operation of law, a direction in a deed that lands shall revert is inapt and meaningless.

3. LIMITATIONS OF ESTATES — DEEDS — CONSTRUCTION — VESTED REMAINDERS.—Under a grant in a deed, after an express life estate to A, of lands to "be distributable among my next of kin," the grantors next of kin at the time of his death, during the existence of the precedent life estate, took a vested estate in remainder.

4. LIMITATIONS OF ESTATES—DEEDS—CONSTRUCTION—FEE.—A fee cannot be conveyed by a deed at common law without the use of the word "heirs" prescribed by law to convey the fee.

5. LIMITATIONS OF ESTATES — DEEDS — CONSTRUCTION — REMAINDERS.—A grant by deed at common law to A and B during the terms of their natural lives, or the lives of either of them, afterwards to revert back to my estate, and be distributable among my next of kin, conveyed successive life estates to A and B, and the grantors next of kin, while the fee remained in the grantor, and descended at his death to his heirs.

6. TRUSTS—LIMITATIONS OF ESTATES—DEEDS.—A deed creating only successive legal estates is not a trust deed.

7. EVIDENCE—DECLARATIONS AS TO TITLE.—The declarations of a tenant as to what she thought about her title are irrelevant in determining the construction to be given the chain of title under which she holds.

8. ESTOPPEL.—Where one is not misled to his prejudice by the declarations of another there is no estoppel.

9. ISSUES.—Where there is no ambiguity in the deeds under which a defendant holds, and no evidence tending to show estoppel, the Court properly directed a verdict in accordance with the legal effect of the undisputed chain of title.

Before MEMMINGER, J., Edgefield, March, 1915. Affirmed.

Action by W. S. Boyce against Harmon C. Mosely, William Toney, H. Spann Toney, Mrs. Ione T. Kirkland, Mrs. Hattie T. Boatwright and Mark Toney. From judgment for defendant, plaintiff appeals. The facts are stated in the opinion.

*Messrs. Thurmond & Ramage, S. M. Smith, N. G. Evans, Tompkins & Wells, S. McG. Simkins,* for appellant, cite: *As to construction of term "next of kin:"* 16 A. & E. Enc. of L. (1st ed.) 707; 5 Words & Phrases 4800; 44 S. C. 516; 4 Rich. Eq. 413. *Intention of grantor should govern:* 79 S. C. 168; 42 S. C. 345; 46 S. C. 370; 74 S. C. 59. *Vested interest:* 1 Hill Ch. 357. *Ambiguity:* 32 S. C. 192; 98 S. C. 234. *Trust evidenced by later writing:* 12 Rich. Eq. 213; 1 McC. Ch. 129; 4 S. C. 144; 2 Rich. Eq. 267. *"Heirs" unnecessary:* 35 S. C. 328. *Contingency to be avoided:* 69 S. C. 285. *Mergers not favored:* 74 S. C. 50; 7 L. R. A. (N. S.) 433. *As to when next of kin took:* 4 Rich. Eq. 413; *Ib.* 415; 2 Strob. Eq. 134; 11 Rich. Eq. 254; 14 Rich. Eq. 146; 72 S. C. 179; 70 S. C. 40. *Regard to intention:* 16 S. C. 309; 16 S. C. 227; 67 S. C. 135, 136. *Vested remainders favored:* 87 S. C. 55, 57. *Mrs. Bacon did not take with next of kin:* 89 S. C. 210; 3 Rich. Eq. 543. *Trust deed and its interpretation:* 51 S. C. 558; 15 S. C. 284; 46 S. C. 558; 35 S. C. 328; 28 A. & E. Enc. of L. (2d ed.) 886; 1 Ves. 491; 3 Burr. 1684; 2 Atkyns 578; *Ib.* 72; 66 S. C. 191, 193; 56 S. C. 78; 13 Rich. Eq. 60; 9 Rich. Eq. 19; 8 S. C. Eq. 222; 10 S. C. Eq. 190; 10 Johns. 505; 15 S. C. 284; 14 S. C. Eq. 293; 20 S. C. Eq. 170; 28 S. C. Eq. 230; Pom. Eq. Juris. (Student's ed.) 981, 990, 998, 1006, 1007; 1 Spence Eq. Juris. 451 and 452. *Tenant for life trustee for remainderman:* 19 S. C. Eq. 268; Perry on Trusts 94; 23 Pick. 313; 2 Pick. 460; 12 Cush. 448; 1 Rich. Ch. 449; 4 Dana 158; 2 Freem. 134; 1 Ch. R. 283; 2 Freem. 136; 1 Ch. Ca. 180; 1 Ch. Ca. 35; 2 Freem. 176; Hard. 204; 1 Atk. 420; 2 Ch. R. 301; 3 Swans. 529;

2 P. Wms. 318; 1 Atk. 382; 7 Paige 187; 1 Rich. Ch. 324; 9 Ham. 203; 2 B. and Sm. 232; 3 M. and Gor. 221; 23 Beav. 33; 15 Sim. 396; 7 Baxt. 353; 86 Tex. 121; 23 S. W. 985; 218 Mo. 708; 118 S. W. 51; 43 W. Va. 367, 369; 27 S. E. 329; 28 A. & E. Enc. of L. (2d ed.) 901; 7 Paige 187; 6 Ired. 139; 34 Am. Dec. 436; 3 Pet. 99, 119, 152; 1 Story Eq. 415; 4 Ves. Jur. 325; 1 Atk. 581; 4 DeS. 209. *Remainders:* 16 S. C. 170. *Contingent:* 1 Hill Ch. 259; 1 Strob. Eq. 44; 10 S. C. 386; 23 S. C. 512. *Vested:* Spears Eq. 412; 4 Rich. Eq. 481; 10 Rich. Eq. 405; 11 Rich. Eq. 527; 12 S. C. 172; 16 S. C. 227; 16 S. C. 290; 20 S. C. 318; 21 S. C. 529. *A devise or bequest to a class, as children, at death of life tenant, the remainder is vested in those living at death of testator:* Speers Eq. 397; 1 Strob. Eq. 82; 1 Strob. Eq. 411; 15 S. C. 432; 16 S. C. 220; 17 S. C. 53. *A devise or bequest to a class, as issue, living at death of life tenant, the remainder is vested in such issue:* 2 S. C. 68. *If by deed to after-born issue, to take share and share alike, it is vested:* Dud. Eq. 205. *If by deed to those living at date of deed, it is vested, but opens to let in others of class, as born, who also take vested interest at birth:* 27 S. C. 484. *The remainder, though contingent, is transmissible to the heirs or representatives of the remaindermen, even though he die before the event upon which he is to take, where he is ascertained and certain, and his existence at the time of such event does not constitute the contingency upon which the remainder is to vest in him, but where only the event upon which he is to take, is uncertain. It is not so transmissible, where the person to take is uncertain, until the estate becomes vested by the happening of the contingency:* 2 Hill Ch. 638; 10 Rich. Eq. 394; 23 S. C. 225; 26 S. C. 462. *Courts favor vested remainders, and no remainder will be construed to be contingent, which may, consistently with the intention, be deemed vested:* McM. Eq. 204; 2 Strob. Eq. 222; 4 Rich. Eq. 285; 2 S. C. 78; 10 S. C. 386; 20 S. C. 75. *The construction which the*

*parties have by their acts placed on an ambiguous instrument is entitled to great, if not controlling, weight in determining its proper construction:* 17 Amer. & Eng. Ency. of Law 24; 37 S. C. 468; 122 U. S. 121; 124 U. S. 505; 9 Wall. 50; 10 Wall. 367; 16 Howard 513; 29 Am. St. Rep. 45; 21 Am. Dec. 680; 43 Am. St. Rep. 217; 43 Am. Rep. 91; 6 Am. Rep. 360; 35 Am. Dec. 370; 8 Am. Dec. 287; 1 Ridgw. P. C. 9; 2 Chitty, Eq. Dig. 1963, 1964, 1978; 4 Bligh 1; 4 How. 353; 13 Cyc. 608; 13 Peters 89; 4 Eng. Chan. 451; 35 Am. Dec. 287; 8 *Ib.* 287; 32 S. E. 189; 171 Ill. 519; 202 Pa. St. 371; 172 Mass. 23; 170 Pa. St. 593. *In construing the deed technical words should yield to plain intent:* 51 W. Va. 106; 2 Devlin, Deeds, secs. 835, 836, 837; 1 Rich. Eq. 61; 3 Cruise, Greenleaf, R. P. 156; 3 Rich. Eq. 156; 12 Rich. Eq. 259; *Ib.* 263. *Issue for jury:* 67 S. C. 18. *Deed takes effect from the time of its delivery, not of its date:* Shep. Touch. 72; Plow. 491 (a); Clayton's Case, 5 Rep. 1; Goddard's Case, 2 Rep. 4 b.; Doe d. *Whatley* v. *Telling,* 2 East 257; *Steele* v. *Mart,* 4 B. and C. 272 (a), *Id.* 119; Elphinstone, Deeds, p. 310.

*Messrs. Hendersons, J. W. Cox, B. E. Nicholson, Sheppard Bros.,* and *Croft & Croft,* for respondents, submit: *Resort must be had to statute of distributions to determine remaindermen:* 3 Rich. Eq. 543; 1 Brev. Dig. 429; 25 S. C. 362; 23 S. C. 224; 9 Rich. Eq. 470; 25 S. C. 492; 1 Hill Ch. 311; 10 Rich. Eq. 392; 26 S. C. 469; 44 S. C. 518; 1 Jarman, Wills 534; 2 Rich. Eq. 267; 64 S. C. 189; 57 S. C. 180; 96 S. C. 264. *Common law deed:* 88 S. C. 298; 84 S. C. 428. *Merger:* 74 S. C. 42; 84 S. E. 713. *Life tenant a distributee:* 1 Strob. Eq. 115. *Estoppel:* 13 S. C. 370.

October 30, 1915.

The opinion of the Court was delivered by Mr. Justice Gage.

Action to recover the possession of 559 acres of valuable lands, situate in Edgefield, near Johnston; and of which, Mosely claims and occupies 490 acres, and the other defendants, called the Toneys, occupy 69 acres.

At the close of all the testimony the Court directed a verdict for the defendants, and the plaintiff appealed.

There are seven exceptions, but there are not so many issues to be decided.

These are the issues made by the exceptions:

(1) What is the meaning of the deed to be gathered from its words and the testimony; and are the plaintiffs the owners of the fee under its limitations?

(2) Did the deed create a trust for those to take after the life tenants?

(3) What construction did Mrs. Bacon put on the deed; and was that for the jury?

(4) Did Mrs. Bacon's conduct thereabout estop her to claim a fee which she undertook to pass by will; and was that for the jury?

The land was confessedly owned and occupied by Harmon Gallman up to his death in 1871.

It was occupied, and whether or not owned, is an issue, by his daughter and only heir at law, Angelina Bacon, until her death in 1913.

This Angelina in 1907, by will then made, undertook to devise the land in fee to the defendants other than Mosely, referred to as the Toneys; and the Toneys conveyed it by deed to Mosely except sixty-nine acres. How those two last transactions came about it is not relevant to enquire. That devise, however, is set up by Mosely as one of his sources of title, and as we conceive it, the controlling source.

Directly after Angelina's death, in 1913, Mosely, early in 1914, took possession of the land, claiming that he was the "next of kin" of Gallman, referred to in the deed of 1870.

It is now conceded that Mosely is the son of Gallman's sister, Martha, and was sole next kin to Gallman at least at the date of Angelina's death.

The plaintiff is a child of America Boyce, who was a niece of Gallman; and there are thirty or forty of such kindred, all grandnieces and grandnephews of Gallman, and the plaintiff sues for himself and for all of the others.

The case arises out of the meaning of a deed made by Gallman to his daughter, Angelina, and her husband, Thos. G. Bacon, in 1870, a half century ago, lacking five years, and just the year before Gallman died.

That instrument conveyed two parcels of land of practically 400 acres and 500 acres, the habendum to each of which was in different words.

No helpful reference may be made by the words of the deed which conveyed the first parcel.

The conveyor undertook, by proper words, to convey the two parcels of land in one deed, and the only thing which concerns this case is the meaning of that part of the deed which undertook to dispose of land put in issue by this case, the second parcel.

The conveyor's intention with reference to the first parcel is not now in issue.

The two grants are separate and distinct, and are in no manner interdependent.

The appellant's counsel suggest that it is apparent from the entire deed that the grantor intended to convey the first parcel of land to his daughter or to her husband, in fee simple; and he intended to convey the second parcel of land to his daughter and her husband only for their lives, with remainder in fee, not to the daughter, but to the grantor's next of kin.

That view would compel a construction of the grant of the first parcel, a matter which is not before us, and a matter about which there might be two opinions by counsel.

The habendum to the second parcel, the only matter of controversy in the deed, is these words:

"To have and to hold the last named tract (1) to the said Angelina and Thos. G. Bacon during the terms of their natural lives, or the lives of either of them; (2) *and afterwards* to *revert* back to my estate; and (3) be *distributable* amongst my *next of kin.*"

The italics and numerals are supplied.

The legal effect of this language is reasonably plain.

1. Speaking about the meaning of the words used, the appellant's counsel (Mr. Thurmond) said at the bar: "The grantor's *real intent* was that the daughter should not take as heir, for he had conveyed the first parcel to her in fee; his idea was to provide for his other kin. The only issue is, can that be done according to the rules of law?"

Speaking about the same subject, counsel for the respondents (Mr. Henderson) says in his printed brief: "Of course, Mr. Gallman never *intended* by his deed to give Mrs. Bacon the fee. That we admit. And it is also admitted that if she got a fee, she got it by mere operation of law."

So counsel on both sides agree that the enquiry is not so much what Gallman intended to do, but what he did do.

It is likely that any English scholar, unfamiliar with legal terminology, would reach the same conclusion about the meaning of the deed as that suggested by counsel for appellant.

But if the grantor has used words which he did not understand, but words which we do profess to understand, then the intention he had will be imputed to the words he used, and as we understand them.

The grantor held in his hand the fee, and he was compelled by the rules of law, when he undertook to convey it by deed, to use the vernacular of the law. In a law deed, the fee wears one garb and none other. The case of *McMillan* v. *Hughes* settled that, by this Court, and against the

expressed view of the writer of this opinion.    88 S. C. 298,
70 S. E. 804.

Henceforth, if Courts must give effect to what is called
real intent as expressed in deed by nontechnical words, the
legislature must intervene by a statute, as it did long since
in the case of wills.

2. We come now down to the numeral (2) in the quoted
clause; hitherto all is plain.

So much of the words of the clause as directs a *reversion*
to the grantor's estate are fruitless, for reversion
"arises by the operation of law and not by deed or
will." The words "to revert back to my estate,"
may, therefore, be read out, for they are inapt.

The other words of the clause, "and afterwards
distributable amongst my next of kin," were
employed to create a vested remainder.

Whether they did create any remainder at all or only a
life estate is a matter yet to be enquired of.    The supposed
remainder was limited to Gallman's "next of kin." Whether
the grantor meant the next of kin in 1871, the date of Gall-
man's death, or to the next of kin in 1913, the date of Mrs.
Bacon's death, the remainder was vested.

It was competent for the grantor to limit the remainder
by express words, or by plain implication to either date; and
whichever he did would control and those answering the
description at that date would enjoy.

The grantor has not fixed the date by express words.

Had he said, "remainder to my next of kin," then the next
of kin in 1871 would have been expressly meant.

Had he said, "remainder to my next of kin who may be
living at the death of the life tenant," then the next of kin
(as it turned out) in 1913 would have been expressly meant.

The language of the grant is in legal effect the same as if
the grantor had said, "remainder to my next of kin," unless
the words which were used necessarily imply that something
else was meant.

The respondents suggest that the use of the other words "and afterwards" plainly show that the grantor had in mind the death of the life tenant as the time when the next of kin should be ascertained.

But the essential nature of a remainder is that it shall commence immediately on the determination of, that is, *after* the life estate, and not in the abridgment of it.

The words used then were not inapt to express the legal devolution; it is the same as if the grantor had said "to Angelina for life, *then* to my next of kin."

But for the use of the words, "and afterwards," there would be no room whatever to suppose that the grantor had fixed a point of time beyond his death to ascertain who were the next of kin to take.

Those words are at least of doubtful import. In no event could any remainderman *enjoy* the gift until *after* the life estate was ended.

So that the grantor may have had that in mind, and was probably not set upon a fixed day in the future when the right of the remaindermen should vest.

At most the words suggest the grantor's notion of the devolution of title, which was manifestly this, that at the execution of the deed the fee passed out of the grantor; that at the death of the life tenant the fee reverted to the grantor; and then again went out to the grantor's next of kin. The truth of the case was not so.

The grantor was not mindful that both estates, the life and the remainder, had birth in the same time and in the same instrument.

We are, therefore, of the opinion, that the grantor has not expressly or impliedly directed that the right to the remainder should be postponed to those answering the description of next kin in 1913; but that those who were next of kin at the grantor's death in 1871 took under the limitation.

The leading case of *Wessenger* v. *Hunt* (9 Rich. Eq.), 30 S. C. Eq., is not hostile to this conclusion.

24—102

In 1871 the plaintiff's mother was one of Gallman's next of kin and her right then vested descended to the plaintiff.

If, therefore, the *fee* had been limited in remainder, the plaintiff's title would be good. And that brings us to the next issue.

3. The conclusion thus reached is not determinative of the cause, for it is certain that whoever took as next of kin, they did not take the remainder, that is, the fee. The grant is simply to next of kin. The grantee took no more of title than those words imply. The fee could be granted only by those words prescribed by law to convey a fee; that is to say, to the next of kin and their heirs forever.

If the next kin took aught, it was only an estate for their lives; and they are all now confessedly dead except Mosely.

But the fee abided; it was not extinguished; as those who fed on the title to the limit of their grant fell out, the fee stretched along the paths of the law, and rested in the sole heir of the grantor, confessedly Mrs. Bacon.

She devised it to the Toneys, and the Toneys conveyed it by deed to Mosely, except as to the sixty-nine acres, which they retain.

In a word, Gallman conveyed two life estates, one to Mrs. Bacon and one to his next of kin, and both have fallen in; but the fee remained in him and descended at his death to his heirs.

4. The appellants, however, suggest, and strenuously maintain, that the unyielding rules for the construction of a common law deed have no application to trust deeds. That is so, and where a Court can it will lay hold of words or acts on circumstances in order to execute the real intent of the grantor. But in the instant case there are none such, and if we may supply them in this instance, they may be so supplied in the construction of every common law deed. We have been cited to no case in our books which would warrant us to conclude that the deed in issue has in it

any words from which is inferable the intent of the grantor to create a trust, or that anything has been proven which suggests a trust.

A trust is defined to be a beneficial title to land held for the beneficiary by another person. Black's Law Dictionary 1175.

Angelina did not hold for the next of kin; and the next of kin had no beneficial interest while Angelina did hold. The next of kin had only a legal title, the same as Angelina had.

5. There is no force in the suggestion that because Mrs. Bacon declared by a paper writing long hitherto made, that which she thought was her title in the land, her assignees are now bound by her construction; and are now estopped to say the contrary.

These are the third and fourth issues as hereinbefore stated.

If a deed should be made by Harmon to his daughter, Angelina, for her natural life, and then simply to John; and if Harmon should die the year after the deed was made, and if Angelina should die forty-five years after; and if John should die before her; then Angelina would have died with the fee in her, by inheritance, no matter what she thought about it.

There will not be two opinions about that case.

Yet that is the case at bar.

It is irrelevant what Angelina thought her title was, else a title would consist, not in a compliance with the law, but in what a grantee thought was a compliance with the law. The plaintiff and those he stands for have not been misled to their hurt by anything which Angelina is said to have done.

They may not, therefore, say Angelina or her assignees are estopped to now say Angelina was the heir at law and had fee in 1871.

There was, therefore, no act to refer to a jury which, if true, was sufficient to establish estoppel; and there was no such ambiguity in the deed, in the light of the proven circumstances, as to warrant a trial by jury.

We think the Circuit Court's view of the law of the case, briefly but comprehensively expressed, is true; and the judgment of that Court is affirmed.