12806

MANIGAULT v. BRYAN *ET AL.*

(151 S. E., 199)

82

*Mr. J. N. Nathans,* for appellant,

*Mr. Nath. B. Barnwell,* for respondents,

January 15, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is primarily an action for the specific performance of a contract entered into between the plaintiff, Mary E. Manigault, and the defendant, Charlotte P. Bryan, for the sale and purchase of a certain house and lot in the city of Charleston known as No. 9 Gibbes Street, at the agreed price of $7,000.

Both parties are anxious to consummate the agreement, but the defendant Charlotte P. Bryan, the proposed purchaser, has raised a question in reference to the ability of Mrs. Manigault to convey to her an unquestionable fee-simple title; she really voices the contention of the other defendants in the case, as will be explained.

The case was submitted to his Honor, Judge Grimball, upon the uncontroverted facts hereinafter detailed. On July 25, 1928, he filed a decree sustaining the contention of the defendants, and from that decree the plaintiff, Mrs. Manigault, has appealed upon exceptions which fairly present the questions hereinafter discussed.

Charles Manigault died on January 14, 1908, seized and possessed of the premises referred to, in fee simple. He left a widow, the plaintiff, and two children, Aimee and Charles; both of them have since died intestate and unmarried; the widow has not remarried.

His will, dated in 1904, provides: "I will give, devise and bequeath all my property of every kind and description unto my wife, Mary E. Manigault, for and during the term of her natural life or widowhood, and from and after the death of my said wife or her widowhood, whichever event may first happen, I give, devise and bequeath all of my said property unto my children living at the death or marriage of my said wife, share and share alike, absolutely and forever; but if there should be only one child living at the death or marriage of my said wife, then I give, devise and bequeath

unto that one child all of my said property, absolutely and forever."

The defendant Josephine Jenkins is a sister of Charles Manigault; the defendant Hawkins K. Jenkins is her husband; and the other defendants Emma. M. Jenkins, Josephine E. Jenkins, Hawkins K. Jenkins, Jr., and Gabriel M. Jenkins are their children—all *in esse* and *sui juris*. They are made parties defendant as the only persons, with the plaintiff, now living, who might possibly be the heirs at law of Charles Manigault, upon the determination of the widow's life estate. All are willing that the sale be consummated at once, and the rights of the parties in reference to the proceeds of the sale adjudicated. The widow claims the whole, and so do the defendants other than the proposed purchaser.

We think that there can be no doubt that the following deductions are legitimate from the terms of the will:

(1) That it vested a life estate in the plaintiff, Mary E. Manigault, the wife of the testator; no one controverts this proposition.

(2) That it vested a contingent remainder in fee in each child to an undivided half interest in the property, contingent upon his or her surviving the mother; both sides present this contention, and it appears manifestly true.

(3) That it vested a contingent remainder in fee in each child as to a half interest of the other contingent upon his or her surviving both the mother and the other child; both sides agree to this proposition, which we think manifestly true.

(4) That it makes no disposition of the estate in the event that has occurred, the deaths of both children during the lifetime of the life tenant; this also is conceded.

Both of the contingent remaindermen having died childless, unmarried, and intestate, after the death of the testator, and during the lifetime of the life tenant, and the fee not having been disposed of by the will upon this contingency, it has become intestate property of the tes-

tator, and the vexing problem is presented, Who are now or will be entitled to the proceeds of the sale of that fee? That is to say, at what period shall the heirs at law of the testator be determined, as distributees? The plaintiff contends that it is the death of the testator; the defendants, the death of the life tenant.

It is in vain to indulge in conjecture as to the intention of the testator under the circumstances, for the reason that there is nothing in the will to indicate that he ever anticipated the situation that the changes of time and the uncertainty of life have presented. It is fundamental that in the construction of an instrument the intention, as gathered from its terms, is always given a very controlling influence; but it appears impossible to attribute to the maker an intention with reference to a situation that he did not anticipate. It is but speaking to the common experience and observation, that, with the greatest of care bestowed in an effort to provide for every possible contingency, the very contingency not provided for, not contemplated, is the very one that has occurred. There can of course be nothing gained from a discussion of not only the uncertain but *the impossible* theory of the maker's intention under such circumstances.

Upon the question of intention, the Court said, in *Bond v. Moore*, 236 Ill., 576, 86 N. E., 386, 391, 19 L. R. A. (N. S.), 540: "It may be said that it will be presumed that the testatrix intended to dispose of her entire estate, and that the will should be so construed, unless this presumption is rebutted by its provisions. It is true that any reasonable construction of a will, consistent with its terms, will be adopted so as to give it effect to dispose of all the testator's property, and not to leave a part intestate, but this rule cannot be carried to the extent of inserting provisions in the will which the testator failed to insert. Clear words are necessary to disinherit an heir; and even where the intention is clearly manifested, the heir will take, unless the testator devises the

property to some one else. *Parsons v. Millar,* 189 Ill., 107, 59 N. E., 606; *Lawrence v. Smith,* 163 Ill. 149, 45 N. E., 259. The Court cannot presume a will for a testatrix on mere speculation as to what might have been her intention. It is the intention of the testatrix only so far as she has communicated that intention by her will which is to govern the descent of her estate. The omission to make any gift, in the one case, may have been the intention of the testator as fully as the gift over in the alternative."

If it could be permitted to launch upon this uncharted sea, the theory that, as the testator gave the widow a life estate, he did not intend that she should receive more than that, is met by the theory that as he was providing for his own family, those who were nearest to him in blood and association, he did not intend that his collateral kin should participate in his estate.

The suggestion is answered by the decree of his Honor, the late Judge Moore, in the case of *Clardy v. Clardy,* 122 S. C., 451, 115 S. E., 603, 604, which was adopted by the Court in this particular: "It is contended on behalf of plaintiffs that there is an inconsistency between an intention to provide a life estate for Mary Francis, and a further intention that she should take as a remainderman in fee. The Court cannot see the inconsistency, and the South Carolina cases are otherwise, as shown above. In the case of *Glover v. Adams,* above, (11 Rich. Eq., 264); the Court said: 'It has been conceived that to allow the husband to take as heir would defeat the intention of the parties to the deed. The intention of parties is not so much to be conjectured as derived, by construction, from their words. In this case, it has been argued that it was not intended to provide for the husband under the description of heir, because he was provided for under another designation. But it will hardly do to blot out one express provision, because there is another express provision. It seems to be going too far to make the husband's exclusion or inclusion depend upon the fact

that provision has been made for him, unless we can be certified that that provision was intended to exclude all further provision; and how can we know that, in the case of express words, that do include him?' "

The contention of the plaintiff is that the interests of the children were nontransmissible contingent remainders; that the fee therefor never passed out of the testator or his estate; that it vested at his death in those who were his heirs at law, herself and the two children who were then alive; that, upon the subsequent death of Aimee, her interest passed to her brother, Charles, and the plaintiff; that upon the death of Charles his interest passed to the plaintiff, giving her the whole. If this contention be sustained, it of course makes an end of the claim of the defendants, other than the proposed purchaser to the entire estate upon the death of the tenant.

His Honor in his decree held as follows: "There is no doubt that the ordinary rule is that where a person leaves a will whereby he devises his property for life, but fails to dispose of the remainder, such remainder will vest in testator's heirs at the time of his death"—citing *McFadden v. McFadden*, 107 S. C., 101, 91 S. E., 986; *Lawrence v. Burnett*, 109 S. C., 416, 96 S. E., 144; *Busby v. Busby*, 142 S. C., 395, 140 S. E., 801; *Boyce v. Mosely*, 102 S. C., 361, 86 S. E., 771.

This is the general rule, and prevails always except in cases wherein the fee has passed out of the testator; so that presents the first question to be decided.

All depends upon the incidents of the contingent remainders devised to the children; that is to say, are they such interests as are inconsistent with the idea that the fees never passed from the testator.

In 23 R. C. L., 507, it is said: "The right of a contingent remainderman is more than a naked possibility, like that of an heir apparent. But a contingent remainder does not arise to the dignity of an estate in the land and confers no interest

in the seisin. While it may be an interest in the estate, though a contingent one, strictly speaking, it is not an estate at all, but a mere chance of having one if the contingency turns out favorably to the remaindermen." 21 C. J., 984.

In *Roundtree v. Roundtree,* 26 S. C., 450, 2 S. E., 474, 482, the Court, in an exceedingly elaborate and clear opinion by Chief Justice McIver, declares that, while certain contingent remainders are transmissible to the heirs of the remaindermen, those of the class here presented are not." 'It is sufficient for our present purpose to say that, where the existence of the remainderman himself, at the time of the event upon which the remainder is to take effect, does not constitute the contingency, then the remainder is transmissible. A testator may make it one of the conditions of the limitation that the remainderman shall survive the first taker; but where he fails to do this, and places the remainder upon some other event or contingency, wholly disconnected from the survivorship of the remainderman, the fact of his non-survivorship will not defeat the remainder' for the obvious reason that the testator has not so declared and directed;' citing *McMeekin v. Brummet,* 2 Hill Eq. 642; *Pritchett v. Cannon,* 10 Rich., Eq. 394; and *Fearne,* Rem., 559, 560. Now in the case under consideration the testator has, as we have seen, made it one of the conditions of the limitation that the remainderman shall survive the first taker,' and therefore the remainders are not only contingent, but they are of such a class of contingent remainders as are not transmissible."

In Kale's Estates, 342, it is said: "To the general rule 'that a contingent remainder of inheritance is transmissible to the heirs of the person to whom it is limited, if such person chance to die before the contingency happens,' Fearne adds only the practical exception of the case 'where the existence of the devisee, etc., of the contingent interest, at some particular time, may by implication enter and make part of the contingency itself, upon which such interest is

intended to take effect.' By way of illustration he puts a case where the husband's remainder in fee was contingent upon his surviving his wife, the life tenant, and where he, having died first, the contingency never arose and so his heirs took nothing. There is, therefore, nothing artificial about this exception. The rule and the exception amount only to this: That all contingent remainders descend unless the death of him who is to take upon the happening of the contingency, is such an event as forever makes it impossible for his interest to vest."

The rule is thus stated in the case of *Kean's Lessee v. Hoffecker,* 2 Har. (Del.), 103, 29 Am. Dec., 336: "Contingent as well as vested interests in either real or personal estate, and also executory devises, and all possibilities coupled with an interest, where the person to take is certain, may be assigned or devised, and are transmissible to the representatives of the devisee, *if he dies before the contingency happens:* and when the contingency does happen, they vest in the representative of the real or personal estate as the case may be. It is otherwise, if the object of the limitation over is not ascertained or fixed; *or the persons to whom the estate is to pass are not ascertainable until the contingency does happen*; as in the case of a limitation to the right heirs of a person living; for during the life of such person, it cannot be known who his heirs will be, nor in whom the interest is. These principles will be found fully established by the following authorities: 4 Burns' Ecc. Law, 139; 2 Wilson 29; 3 Term, 93-4; 1 Vezey, 47, 237; 2 Saund. 388, note h; 1 Hy. Blac., 30; Talbot, 117; Willes, 211; 1 P. Wms., 564; 1 Fearne on Remr., 534, 536, 540; 2 Fearne, 530. *et seq.;* 4 Kent's Com., 284, 510."

In *Walker v. Alverson,* 87 S. C., 55, 68 S. E., 966, 967, 30 L. R. A. (N. S.), 115, the Court said: "If the limitation to her was a contingent remainder, the purchaser at the sheriff's sale took nothing, and she is entitled to recover. But, if her interest was a vested remainder, it was conveyed

by the sheriff's deed, and the defendant is entitled to retain the possession."

If the contingent remainders then were not transmissible, could not be aliened, and could not be levied upon under execution, the remaindermen had nothing more than an expectancy which would ripen into a fee if they complied with the condition imposed; an interest which was entirely compatible with the nonpassing of the fee.

The following authorities clearly show that, in the case of a non-transmissible, non-assignable, non-leviable contingent remainder, the fee remains in the testator or his heirs until the happening of the condition upon which the remainder takes effect in possession:

In 21 C. J., 993, it is said: "The logical and more reasonable theory, however, is that in such a case the inheritance remains in the grantor or his heirs or in the heirs of the testator, until the contingency happens to take it out of them."

In *Belding v. Parsons*, 258 Ill., 422, 101 N. E., 570, 571, it is said: "Until the vesting of a contingent remainder or the determination of the impossibility of its vesting, the reversion in fee is in the heirs of the testator. *Bond v. Moore*, 236 Ill., 576, 86 N. E., 386, 19 L. R. A. (N. S.), 540; *Harrison v. Wettherby*, 180 Ill., 418, 54 N. E., 237; *Peterson v. Jackson*, 196 Ill., 40, 63 N. E., 643."

In 3 Thomp. Real Pr. § 2162, it is said: "Where a deed conveyed a life estate, with a contingent remainder to others, the fee remained in the grantor, subject to be divested by the happening of the contingency upon which the title would vest in the remaindermen, and descended to the heirs of the grantor in case of his death before the happening of the contingency."

In *Collins v. Sanitary District of Chicago*, 270 Ill., 108, 110 N. E., 318, 320, the Court said: "That the remainders were contingent, and no title vested in the children of the grantees until the termination of the life estate is settled by repeated decisions. *Belding v. Parsons*, 258 Ill., 422, 101

N. E., 570; *Barr v. Gardner*, 259 Ill., 256, 102 N. E., 287; *Hill v. Hill*, 264 Ill., 219, 106 N. E., 262. The fee therefore remained in the grantor, subject to be divested by the happening of the contingency upon which the title would vest in the remaindermen, and descended to the heirs of the grantor at her death."

In the case of *Rochell v. Tompkins*, 1 Strob. Eq., 114, there was devised a life estate to the widow, and at her death it was to revert to the estate of the testator; no disposition of it in that event was made. The widow died without issue, and the question arose, considering the reversion as intestate property, whether the next of kin of the testator should take the property to the exclusion of the next of kin of the widow; the contention of the testator's kin being that, the widow having died before the reversion could occur, she had not inherited any part of it and could transmit none to her next of kin. The Court, however, did not sustain this contention, but held that, upon the death of the testator, the reversion which was certain to occur vested in those entitled to distribution, amongst whom the wife was most prominent. It was decided that the wife inherited one-half of the reversion, distributable among her next of kin and the other half among the testator's next of kin. The ground of decision in that case as in this was that the fee had never left the testator or his estate; that immediately upon his death it passed in part to the widow and never left her; her death was not necessary to its creation, and at the time of her death it remained in her, and naturally passed to her heirs at law.

In the case of *Lawrence v. Burnett*, 109 S. C., 416, 96 S. E., 144, it was held that, as Simeon Gowan took only a life estate under the will and deed (construed together), of his father, William Gowan, and as the remainder was undevised, except upon a condition which did not happen, the reversion to the grantor and testator, William Gowan, of the fee, was intestate property, and descended under the statute to the heirs of William at the time of his death, one

of whom was Simeon, who thus inherited one-seventh of the land. As in the *Rochell Case,* the title to the reversion, which all the time existed, never left the testator, and as a matter of course vested at his death to the extent of one-seventh in Simeon, although all the while he held a life estate in the whole. Nothing that Simeon did or refrained from doing created or accelerated the reversion. If his death had done so, it seems clear that, being dead, he could not have inherited.

In the case of *Blount v. Walker,* 31 S. C., 13, 9 S. E., 804, the testatrix devised the estate to a trustee, for the life of Mrs. Blount, her daughter, and upon the death of the life tenant to her issue; in default of issue surviving her, for such persons as the life tenant might appoint by will. The life tenant died without leaving issue and without having exercised the power of appointment by will. The question arose as to who was entitled to the estate upon the falling in of the life estate—the heirs of the testatrix at her death, or the heirs of the testatrix at the termination of the life estate. There was nothing in the will directing a disposition of the estate in the contingency which happened. The Court held that, under the circumstances, the trustee who was vested with the legal title, held it in trust for those heirs of the testatrix who were alive at the time of the death of the life tenant, the time at which the resulting trust arose. Stress is laid by the Court upon the fact that the fee was vested in the trustee, so that it could not be a case of intestacy.

In *Boykin v. Springs,* 66 S. C., 362, 44 S. E., 934, 937, the Court said: "A contingent remainder, technically speaking, is not an estate in lands, but is the possibility of one. If the remaindermen be ascertained, it is a possibility coupled with an interest, and it is a devisable, transmissible, and in equity assignable; but if the remaindermen be not ascertained, such bare possibility is not capable for devise, transmission, or assignment. 20 Ency. Law, 849; *Allston v. Bank,*

2 Hill Eq., 235; *Roundtree v. Roundtree,* 26 S. C., 451, 2 S. E., 474."

A non-transmissible contingent remainder is not subject to the lien of a judgment. *Allston v. Bank of South Carolina,* 2 Hill Eq., 235.

We are much impressed by the statement of Chief Justice Simpson, dissenting, in the case of *Blount v. Walker,* 31 S. C., 13, 9 S. E., 804, 809: "The vital question, then, in the first instance, is, did Mrs. Harris die intestate as to the property in question. There is no doubt but that Mrs. Harris left a will, and yet it is equally as certain that there was no beneficial interest disposed of to anyone, except a life estate to Mrs. Blount. There was a contingency, which if it had happened, would have accomplished a disposition of the whole estate; but, it not happening, it was the same as if no such contingent disposition had been attempted, and the will should now be read as if such provision had not been incorporated therein, * * * " and the law would have cast the same upon her (Mrs. Harris) heir or heirs in being at her death.

Consequently all that we would have would be a life estate in the widow with no disposition of the fee, which fee would descend to the heirs of the testator at the time of his death, the plaintiff and the two children; and, the interests of the children having descended to her as their sole heir at law, she would be entitled to the whole estate.

It is unquestionably true that the result attained is not sustained by anything in the will; but that is due to the failure of the testator to dispose of the fee, and the impossibility of deducing the intention which he might have entertained if he had contemplated the improbable events of both children dying during the lifetime of their mother. Having made no such disposition, the law makes it for him.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for further orders consistent herewith.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE STABLER (dissenting) : For the reasons stated by his Honor, Judge Grimball, in his decree, which will be reported, I think the judgment of the Circuit Court should be affirmed.